UNITED STATES of America,
Plaintiff-Appellee,

v.

Wendell COLE, Howard Masters, B.K.
Taylor, Larry Masters,
Defendants-Appellants.

No. 82–5455.

United States Court of Appeals,
Eleventh Circuit.

March 19, 1985.

750

752

G. Russell Petersen, Vero Beach, Fla., defendant-appellant H. Masters.

Bruce Wilkinson, Stuart, Fla., for defendants-appellants B.K. Taylor and L. Masters.

Robyn J. Hermann, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant W. Cole.

Samuel J. Smargon, Linda C. Hertz, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

HATCHETT, Circuit Judge:

In this criminal drug case, we review the district court's order entering judgment against appellants. We affirm.

### Facts

Sometime between October, 1977, and July, 1981, Donald Raulerson organized a marijuana smuggling operation. As a result, Raulerson imported more than 500,000 pounds of marijuana and earned over $100 million dollars. Although a large number of co-conspirators are involved in this case, for purposes of this appeal we review the convictions of Wendell Cole, Howard Masters, Larry Masters, and B.K. Taylor.

Early in the enterprise, Raulerson recruited Jose Pena and instructed him to go to Texas and purchase $5,000 worth of marijuana. In accordance with Raulerson's instruction, Pena went to Texas and purchased 30 pounds of marijuana at $150 per pound. Pena kept the remaining $500 as expense money; he delivered the marijuana to Raulerson.

On numerous occasions during the spring and early summer of 1978, Raulerson employed small airplanes to import marijuana from Colombia, South America. On each trip, the airplanes brought more than 1,000 pounds of marijuana into the United States. Raulerson, with the help of appellant, Howard Masters, and James Taylor, made the necessary arrangements for each load. Jose Pena, Guy Brown, Sam Stefanides, Jerry Raulerson, and appellants, Larry Masters and B.K. Taylor offloaded the marijuana from airplanes at various drop off points in south Florida.

Raulerson also used vessels to import marijuana. On several occasions, Raulerson's offloading crew moved more than 6,000 bales of marijuana from vessels located behind appellant, Taylor's, home. Occasionally, Raulerson's crew loaded the marijuana into vans and delivered it to other parties by leaving the vans at prearranged sites.

In October, 1978, Raulerson supplied Pena with $500,000 of front money and instructed Pena to purchase marijuana for Raulerson's smuggling operations. Pena went to Colombia, South America, and met with Enrique Coronado, Raulerson's South American supplier. While in South America, Pena arranged for 100,000 pounds of marijuana to be imported to the United States on a 200-foot freighter; the marijuana was to be offloaded near Marathon, Florida. Pena and a crew of sixteen people returned to the United States aboard this freighter.

Later, on December 28, 1978, the freighter, BP25, came within seventy miles east of Marathon, Florida. Crewmen, on three shrimp boats, met this vessel. The crewmen offloaded the marijuana into the smaller vessels. The marijuana was offloaded, counted, weighed, and distributed at a

---

* Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

house leased by Donald Raulerson in the Marathon, Florida, area. Appellant, B.K. Taylor, supervised the offloading crew which was composed of approximately thirty people including Guy Brown, Jorge Pena (Jose Pena's brother), Sam Stefanides, appellant, L. Masters, and appellant, Wendell Cole.

During the offloading process, appellant, L. Masters, assisted Sam Stefanides weigh the marijuana. The offloading process took approximately three days. For this three-day period, Donald Raulerson resided in a nearby motel with appellant, Howard Masters, and Billy Morris. These men examined the marijuana and made arrangements for its delivery and distribution. Appellant, Wendell Cole, along with other offloaders, drove a truck loaded with marijuana from Marathon, Florida, to Naples, Florida.

On March 27, 1979, Jose Pena, Sam Stefanides, and appellant, Taylor, went to Colombia, South America, with $1 million and instructions from Donald Raulerson to arrange another "Marathon marijuana deal." The three men carried the $1 million dollars in three or four suitcases. They arrived in Colombia on a commercial airplane and were met at the airport by Coronado's employees. Appellant, Taylor, helped Stefanides and Pena carry the money while in Colombia.

Pena and Coronado discussed the amount of marijuana to be imported and the price. They concluded that 100,000 pounds of marijuana would be shipped to the United States at $70 a pound. Donald Raulerson, Billy Morris, and Jose Pena owned this load of marijuana. The freighter, BP25, was used to import the marijuana. Upon arrival, this vessel was offloaded onto three large fishing vessels near Biloxi, Mississippi. Two of the three large fishing vessels were seized by local authorities in Biloxi. The third vessel, however, was offloaded on the gulf coast of Florida.

On August 27, 1979, Pena met with Donald Raulerson, Robert Ewan, Jr., Billy Morris, and Enrique Coronado. At this meeting, Pena informed Coronado that the ves-

sel's seizure was not his fault because he had nothing to do with the choice of locations taken by the boats. The working relationship between Pena and Raulerson deteriorated; Pena never worked for Raulerson again. The remaining salient facts are in the discussion below.

### Issues

On appeal, we must determine: (1) whether the evidence was sufficient to convict Howard Masters and Larry Masters of conspiracy to import marijuana; (2) whether the evidence was sufficient to convict Larry Masters of attempted importation of marijuana; (3) whether the district court erred in denying appellants' motion to inspect grand jury records; (4) whether the district court erred in denying appellants' motion to dismiss Count II of the indictment; (5) whether the district court erred in denying appellants' request for a bill of particulars; (6) whether the evidence was sufficient to support a jury finding that the substance in question was marijuana; (7) whether the district court properly denied the motions for severance of appellants B.K. Taylor, Larry Masters, and Howard Masters; (8) whether appellant Taylor was deprived of due process of law and his right to a fair trial; (9) whether the district court properly denied appellant, Cole's, request for a judgment of acquittal on the theory of multiple conspiracies; (10) whether the district court abused its discretion in admitting the tape recordings into evidence; (11) whether the opening statement and closing arguments presented by the government were improper; and (12) whether the district court erred in denying appellant, Larry Masters, adopted challenges to the composition of the grand jury. We will consider these issues in turn.

### Discussion

I. Sufficiency of the Evidence to Sustain the Convictions of Appellants Howard Masters and Larry Masters.

■ Howard Masters and Larry Masters contend that the evidence produced against them was legally insufficient to support the jury's verdict, and, therefore, they were entitled to judgments of acquittal. In re-

viewing this issue, we must determine whether, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt as to each appellant. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983); *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). All reasonable inferences must be drawn in favor of the jury's verdict. *United States v. Ceballos*, 706 F.2d 1198, 1202 (11th Cir.1983). Moreover, credibility choices in deciding which version of a story to believe are a matter for the jury. *United States v. Branca*, 677 F.2d 59, 61 (11th Cir.1982).

■ This circuit does not require that the evidence preclude every reasonable hypothesis of innocence. Rather, we determine whether a reasonable jury could find that the evidence establishes appellants' guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The government, however, need not prove that the facts of the case are inconsistent with the defense's theory of the case. The jury is free to choose among alternative reasonable constructions of the evidence. *Bell*, 678 F.2d at 549.

The jury convicted Larry Masters of conspiracy to import and attempted importation of marijuana. It convicted Howard Masters of conspiracy to import marijuana.

■ To sustain the convictions on the conspiracy counts, we must be satisfied that the government proved beyond a reasonable doubt that these appellants had "deliberate, knowing, specific intent to join the conspiracy." *United States v. DeSimone*, 660 F.2d 532, 537 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982) (citing *United States v. Morado*, 454 F.2d 167, 175 (5th Cir.), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972)).

■ It is well-settled law that participation in a conspiracy need not be proved by direct evidence. *United States v. Arredondo-Morales*, 624 F.2d 681, 683 (5th Cir. 1980). A common purpose and plan may be inferred from the actions of the actors or by circumstantial evidence of a scheme. *United States v. Conway*, 632 F.2d 641, 643 (11th Cir.1980). To be sure, participation in a criminal conspiracy can be inferred from a "development and collection of circumstances." *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.1981), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (quoting *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

■ To prove the existence of a conspiracy, the government must show an agreement or common purpose to violate the law. *United States v. Watson*, 669 F.2d 1374, 1379 (11th Cir.1982). Each defendant must have joined the conspiracy intentionally, but each need not be privy to all the details of the conspiracy, or be aware of all the other conspirators, or participate in every stage of the conspiracy. *Watson*, 669 F.2d at 1379; *United States v. Becker*, 569 F.2d 951, 961 (5th Cir.), *cert. denied*, 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

■ The government presented evidence that in October, 1978, Donald Raulerson and Jose Pena agreed that Pena would assist Raulerson in his effort to increase his marijuana smuggling operations. Specifically, Raulerson gave Pena $500,000, and Pena agreed to meet with Enrique Coronado, Raulerson's South American supplier and arrange for 100,000 pounds of marijuana to be imported to the United States on a 200-foot freighter. On December 28, 1978, the freighter, BP25, came within seventy miles east of Marathon, Florida, where crewmen from three shrimp boats offloaded the marijuana into the smaller vessels.

A government witness, Guy Brown, testified that appellants, Larry Masters, Wendell Cole, B.K. Taylor, and others partici-

pated in this four-day offloading operation of 100,000 pounds.

Another government witness, Dewey Brown, testified that he received an airplane from Larry Masters, and they flew to Colombia, South America, to arrange a marijuana deal. While flying in Colombia, Dewey Brown and Larry Masters were unable to locate the air strip on which they were to land. As a result, they nearly exhausted all of their fuel. Dewey Brown and Larry Masters then decided to land the airplane and check the fuel. After landing near the town of Latacunga, Larry Masters sought "to contact a Colombian in Barranquilla" whose name was "Enrique."

Eventually, Larry Masters and Dewey Brown went to an air strip outside the town. At the airstrip, a Piper Navajo aircraft was refueled and loaded with marijuana. Larry Masters, Little John, Curtie, and Dewey Brown flew in the airplane to Fort Pierce, Florida, with Curtie piloting the airplane.

Approximately fifteen to twenty minutes before landing, Larry Masters and Little John dropped marijuana from the airplane in the Continental United States. After the airplane landed, Larry Masters, Little John, and Dewey Brown met Donald Raulerson in the parking area. Soon thereafter, Brown, Little John, Raulerson, and Larry Masters went to Howard Masters's house. Upon arrival at Howard Masters's house, the men, along with several other people who were there, discussed the events of the day. Howard Masters paid Dewey Brown $1,000 for his Colombia, South America, trip.

Our review of the government's evidence is limited to a determination as to whether a reasonable trier of fact could have found beyond a reasonable doubt that Howard Masters and Larry Masters conspired to import marijuana into the United States. *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983). Examination of the government's evidence reveals that an agreement existed between two or more persons to import marijuana into the United States and that Larry Masters and How-

ard Masters knowingly and voluntarily joined and participated in this illegal venture. *United States v. Vera,* 701 F.2d 1349 (11th Cir.1983). The existence of the conspiracy to import marijuana is established by the circumstances surrounding: (1) Larry Masters's delivery of an airplane to Brown to be used to fly marijuana; (2) Larry Masters's trip, with Dewey Brown, to Colombia, South America; (3) Larry Masters's persistent attempts to contact Enrique while in Colombia; (4) Larry Masters's subsequent trip from Colombia to the United States on an aircraft loaded in his presence with marijuana; (5) Larry Masters's participation in throwing marijuana out of the airplane at specified locations in the United States; (6) Larry Masters's subsequent trip, along with Dewey Brown, Little John, and Donald Raulerson to Howard Masters's home where a discussion took place as to the events of the day; and (7) Howard Masters's payment of $1,000 to Dewey Brown for his trip to South America.

Viewing this evidence in the light most favorable to the government, we conclude that a reasonable trier of fact could have found that an agreement to import marijuana into the United States existed, that Howard Masters and Larry Masters had knowledge of this objective, and that Howard Masters and Larry Masters voluntarily joined and participated in this illegal venture. *United States v. Badolato,* 701 F.2d 915 (11th Cir.1983); and *Tamarago,* 672 F.2d 887 (11th Cir.1982). Accordingly, we hold that the evidence is sufficient to support appellants' convictions.

## II. Attempted Importation.

■ Larry Masters further contends that the evidence is insufficient to support his conviction of attempted importation of marijuana. Larry Masters argues that the evidence, at best, shows that he took an airplane ride to Colombia, South America. Viewing the evidence in the light most favorable to the government, we believe that a reasonable jury could have found that the evidence detailed above established Larry

Masters's guilt beyond a reasonable doubt of attempted importation. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Bell*, 678 F.2d 547 (5th Cir. Unit B) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1982).

### III. Inspection of Grand Jury Records.

Appellants, Howard Masters, Larry Masters, and B.K. Taylor contend that their due process rights were violated because the district court denied their motion to inspect the grand jury minutes. Appellants argue that the prosecutor manipulated the grand jury process by presenting to the grand jury a pre-signed indictment. Moreover, Howard Masters and Larry Masters claim that the superseding indictment increased the charges against Larry Masters and charged Howard Masters because he exercised constitutionally protected rights.

### A. Pre-signed Indictment

▆▆▆ The United States Attorney signed the superseding indictment prior to its presentation to the grand jury. This, however, does not render the indictment null or void. *United States v. Brown*, 684 F.2d 841, 842 (11th Cir.1982). The United States Attorney's signature is not a certificate that the indictment is in proper form, nor is it an attestation of the grand jury's conduct. *United States v. Cox*, 342 F.2d 167, 171–72 (5th Cir.1965). Instead, the United States Attorney's signature evidences a recognition that the government attorney has exercised his discretion to permit the indictment to be brought, and demonstrates that he joins the grand jury in commencement of the criminal proceeding. *See United States v. Levine*, 457 F.2d 1186, 1189 (10th Cir.1972).

▆▆▆ Appellants have not shown, and we, therefore, are not convinced that appellants suffered any prejudice arising from the use of the presigned indictment. Accordingly, the presigned indictment in this case does not constitute a due process violation. *See United States v. Brown*, 684 F.2d 841 (11th Cir.1982).

### B. Superseding Indictment

Appellants, Howard Masters and Larry Masters also assert that the government's submission of a superseding indictment to the grand jury was motivated by prosecutorial vindictiveness and, thus, demonstrates a due process violation sufficient to require dismissal of the indictment. Howard Masters argues that the prosecutor urged him to plead guilty to a less serious felony offense and, thereafter, promised that if he did, his sons would not be charged. Howard Masters refused to accept the alleged offer. While a prosecutor's offer, during plea bargaining, of adverse or lenient treatment for some person other than the accused might pose a greater danger of inducing a false guilty plea by skewing the assessment of the possible risks, that is not this case. Howard Masters entered a not guilty plea; he was not induced to enter a false guilty plea.

▆▆▆ Howard Masters and Larry Masters were properly charged under the relevant statutes. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978). A prosecutor may seek a superseding indictment at any time prior to a trial on the merits. *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir.1983) (citing *United States v. Stricklin*, 591 F.2d 1112 at 1115 n. 1 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979)).

In a strikingly similar case, the prosecutor explicitly told the defendant that if he did not plead guilty and "save the court the inconvenience and necessity of a trial," he would return to the grand jury and seek an indictment under a recidivist statute which would significantly increase the defendant's potential punishment. *Bordenkircher v. Hayes*, 434 U.S. 357, 358–59, 98 S.Ct. 663, 665–66, 54 L.Ed.2d 604 (1978). Like Howard Masters, the defendant in *Bordenkircher* refused to plead guilty, and the prosecutor obtained an indictment charging

him under the recidivist statute. The parties in *Bordenkircher* agreed that the recidivist charge was justified by the evidence, that the prosecutor was in possession of this evidence when he sought the original indictment, and that the defendant's refusal to plead guilty to the original charge led to his indictment under the recidivist statute. *Bordenkircher*, 434 U.S. at 359, 98 S.Ct. at 665.

The *Bordenkircher* Court stated that as long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, the decision whether or not to prosecute, and if so, what charge to bring before the grand jury, rests in the prosecutor's discretion. The court then held that the course of conduct employed by the prosecutor, which presented the defendant with the alternatives of pleading guilty and foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the due process clause of the fourteenth amendment. *Bordenkircher*, 434 U.S. at 365, 98 S.Ct. at 669.

The *Bordenkircher* Court observed:

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see *North Carolina v. Pearce*, supra, [395 U.S. 711] at 738, 89 S.Ct. 2072 [at 2082], 23 L.Ed.2d 656 [(1969)] (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' *Chaffin v. Stynchcombe*, supra, [412 U.S. 17] at 32–33, n. 20, 93 S.Ct. 1977 [at 1985–1986 n. 20], 36 L.Ed.2d 714 [(1973)]. See *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 [(1968)]. *But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.*

*Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668 (emphasis added).

More recently, in *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court reaffirmed and explained its holding in *Bordenkircher*. In doing so, the Court explained that the *Bordenkircher* Court declared that "by tolerating and encouraging the negotiation of pleas, this Court has accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his constitutional right to stand trial." *Goodwin*, 457 U.S. at 378, 102 S.Ct. at 2491. The Court further explained that "[t]he outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process." *Goodwin*, 457 U.S. at 378, 102 S.Ct. at 2491.

■ After examining the record before us for objective evidence of prosecutorial vindictiveness, we find none. It is undisputed that Larry Masters and Howard Masters were properly chargeable under the added counts of the superseding indictment, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Howard Masters's refusal to plead guilty to the original charge led to his indictment. These facts do not give rise to a presumption of prosecutorial vindictiveness.[1] Accordingly, we hold that in this case no showing of prosecutorial vindictiveness exists; therefore, no due process violation appears. *Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494.

### C. Grand Jury Records

■ Larry Masters, Howard Masters, and B.K. Taylor argue that their due process rights were violated by the district court's refusal to allow inspection of the grand jury records. A defendant must show "particularized need" to justify infringement of the secrecy surrounding a grand jury. *United States v. Tucker*, 526 F.2d 279, 282 (5th Cir.1976). Appellants,

---

**1.** We, however, do not foreclose the possibility that in a proper case a defendant may prove through objective evidence an improper prosecutorial motive.

however, contend that the prosecutor manipulated the grand jury process as shown by the fact that the prosecutor presented to the grand jury a presigned indictment. The presigned indictment bears no inscriptions or other signs of manipulation.

■ We find that appellants' unsubstantiated allegations of grand jury manipulation do not satisfy the "particularized need" standard. *United States v. Howard,* 433 F.2d 1 (5th Cir.1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971). In sum, we hold that the district court did not err in denying appellants' motion to inspect the grand jury records based on the government's submission of a presigned superceding indictment to the grand jury.

IV. Count II of the Indictment.

■ Appellants, Howard Masters and B.K. Taylor contend that Count II of the indictment should have been dismissed because it did not give a plain, concise, and definite statement of the essential facts constituting the offense charged. These appellants also contend that the indictment was too vague to satisfy their sixth amendment right to be informed of the government's accusations against them. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). To pass constitutional scrutiny, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime. *Hamling,* 418 U.S. at 117, 94 S.Ct. at 2907. Furthermore, an indictment for conspiracy to commit a criminal offense is not required to be as specific as a substantive count. *United States v. Ramos,* 666 F.2d 469, 475 (11th Cir.1982).

■ Count II of the superseding indictment states the elements of the offense charged against Howard Masters and B.K. Taylor—knowingly and willfully conspiring to import marijuana, a Schedule I controlled substance, into the United States from Colombia, South America, in violation of 21 U.S.C.A. §§ 952(a) and 963 (West 1981).[2] The indictment expressly identified appellants' co-conspirators and the controlled substance involved. *See United States v. Ramos,* 666 F.2d at 474. The indictment also identified the time span of the conspiracy: from some unknown time prior to October 1, 1977, until the date of the filing of the original indictment (July 31, 1981). *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978). Moreover, the indictment described the locale of the alleged conspiracy; the government alleged that the criminal activity took place in St. Lucie, Dade, and Monroe Counties, within the Southern District of Florida, and elsewhere. Finally, the indictment specifies the statutes (21 U.S.C.A. §§ 952 and 963) allegedly violated.

Count II is sufficiently specific to inform appellants of the charges against them and to enable them to plead double jeopardy in any future prosecutions for the same offense. *See Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. at 2907. The district court did not err in denying appellants' motion to dismiss Count II of the indictment.

**2.** Title 21 U.S.C.A. § 952(a) provides:
(a) It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter. . . .

Title 21 U.S.C.A. § 963 provides:
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## V. Appellants' Request For a Bill of Particulars.

Appellants, Howard Masters and B.K. Taylor, contend that the district court abused its discretion in denying their motions for a bill of particulars under Federal Rule of Criminal Procedure 7(f).[3] On August 19, 1981, appellants, along with other defendants, filed a motion for a bill of particulars. Subsequently, B.K. Taylor filed a motion to adopt the motions of the other defendants. The district court denied appellants' main motion for a bill of particulars. Thereafter, the district court granted in part an amendment to the motion for a bill of particulars. The district court determined that the government need only provide the names of all known co-conspirators, indicted or unindicted, and the approximate date when each defendant entered and, "if applicable," left the alleged conspiracy. On appeal, appellants argue that the district court abused its discretion in not granting their motion for a bill of particulars as amended.

 It is well settled law that "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error." *United States v. Crippen*, 579 F.2d 340, 347 (5th Cir.1978). Moreover, a district court is vested with broad discretion in deciding whether a bill of particulars should be granted. *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir.1981); *United States v. Wilson*, 647 F.2d 534, 536 (5th Cir.1981); *Roberson v. United States*, 249 F.2d 737, 739 (5th Cir.1957). We will reverse a district court's refusal to grant a request for a bill of particulars only if it can be shown that the defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights. *See*

*United States v. Williams*, 679 F.2d 504, 510 (5th Cir.1982) (citing *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981)).

 The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense. *United States v. Cantu*, 557 F.2d 1173, 1178 (5th Cir.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978); *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir.1977).

 The superseding indictment in this case tracked the language of the statutes involved and adequately informed appellants of the charges pending against them. *See Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Furthermore, the evidence presented in this case consisted of testimony by witnesses and federal agents of conversations and activities in which appellants participated. In *United States v. Cantu*, 557 F.2d 1173 (5th Cir.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978), this court's predecessor stated that where the evidence consists mainly of testimony by witnesses of conversations in which a defendant participated, of activity in a defendant's place of business which he witnessed, and of arrests in the business parking lot which he also witnessed, the defendant "could hardly have been surprised by the government's proof at trial." *Cantu*, 557 F.2d at 1178 (quoting *United States v. Pena*, 542 F.2d 292, 293, 294 (5th Cir.1976)). Accordingly, because the evidence presented in this case consisted of testimony of conversations and activities in which appellants, Howard Masters and B.K. Taylor, participated, appellants were not surprised by the testimony of witnesses who were

---

**3.** Rule 7(f) of the Federal Rules of Criminal Procedure provides:

(f) Bill of Particulars. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made

before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

present during the conversations and who were joint participants in the illegal activity. In any event, appellants have not shown that the government's failure to provide a bill of particulars resulted in surprise or prejudice at trial. Finding no abuse of discretion, we hold that the district court's refusal to grant the requested bill of particulars, as amended, does not constitute reversible error.

## VI. Sufficiency of the Evidence—Count VI.

■ Appellant, Cole, contends that the evidence was insufficient to support a jury finding that the substance charged in Count VI was marijuana. In Count VI of the superseding indictment, the grand jury charged Wendell Cole with knowingly and intentionally possessing marijuana with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) (West 1981) and 18 U.S.C.A. § 2 (West 1969).[4] The jury found Cole guilty as charged. The nature of a narcotic drug may be established by circumstantial evidence, as long as the drug's identity is established beyond a reasonable doubt. *United States v. Quesada,* 512 F.2d 1043, 1045 (5th Cir.), *cert. denied,* 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975).

■ The government's evidence demonstrated that a house was acquired for the purpose of storing marijuana imported from outside the United States prior to distribution in the United States. At trial, Stefanides testified that Donald Raulerson rented a house for the purpose of storing marijuana imported from outside the United States. He further testified that on three or four occasions, he and Wendell Cole loaded bales of marijuana from the

house into a vehicle. Stefanides stated that, "Mr. Cole was one of the drivers transporting the marijuana out from the rented house to whatever destination." Stefanides admitted that he had handled bales of marijuana approximately seventy times and that he would start out carrying one bale of marijuana to a designated point, drop it off there, return approximately two days later, pick up the money, and carry the money to Donald Raulerson. In July, 1978, law enforcement authorities apprehended Stefanides with twenty-five bales of marijuana. Stefanides admitted that he possessed the marijuana and pleaded guilty. Stefanides also testified that he had a discussion with Donald Raulerson "concerning an operation of moving approximately 100 bales of marijuana from South Beach in Fort Pierce to Donald Raulerson's house in Fort Pierce." In sum, Stefanides, an admitted drug smuggler, testified that the substance in the bales and the substance transported by Wendell Cole was marijuana.

We hold that the jury could have found beyond a reasonable doubt that the testimony of Stefanides proved that the substance was marijuana. We, therefore, affirm the district court's ruling that the evidence is sufficient to support Cole's conviction under Count VI of the superceding indictment.

## VII. Appellants' Motions for Severance.

■ Appellants, Larry Masters, Howard Masters, and B.K. Taylor contend that the district court abused its discretion in denying their motion for a severance under Federal Rule of Criminal Procedure

---

**4.** 21 U.S.C.A. § 841(a)(1) (West 1981) provides in pertinent part:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ...
 (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

18 U.S.C.A. § 2 (West 1969) states:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

14.[5] Generally, co-conspirators should be tried jointly. *United States v. Astling*, 733 F.2d 1446, 1454 (11th Cir.1984). To demonstrate an abuse of discretion, appellants must establish that they "suffered compelling prejudice against which the trial court was unable to afford protection." *United States v. Russell*, 703 F.2d 1243, 1247 (11th Cir.1983) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. Unit B 1981)). Rule 14 discusses prejudicial joinder and requires a district court to weigh the prejudice inherent in a joint trial against the interest of judicial economy, and thereafter, to sever defendants or charges as the needs of justice dictate. This balancing process is wholly committed to the sound discretion of the district court, and this court will not substitute its judgment for that of the district court absent a showing that the district court has abused its discretion. *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. McLaurin*, 557 F.2d 1064, 1075 (5th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978). The general test for determining whether a defendant has met the burden of showing prejudice was stated by this court's predecessor as:

> [W]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*Tillman v. United States*, 406 F.2d 930, 935 (5th Cir.), *vacated in part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969), *quoted in United States v. McLaurin*, 557 F.2d 1064, 1075 (5th Cir.1977).

▮▮▮ Based on this general test, we find no abuse of discretion in the district court's denial of appellants' motion for a severance. The indictment outlines an alleged pattern of related and concerted activity both in the conspiratorial allegations (Counts II and XIV) and the related substantive enterprise, importation, distribution, and possession allegations. In light of these circumstances, we cannot say the district court acted unreasonably in considering the judicial economy and expense that would be saved if the defendants were tried jointly. Furthermore, the record reveals that the witnesses clearly identified the defendants about whom they testified. The record also reveals that the jury acquitted some defendants on various counts and found them guilty on others. These facts demonstrate that the jury was able to sort out the evidence relevant to each defendant and render a verdict based solely upon that defendant's acts, statements, and conduct. Accordingly, we reject appellants' contention that the district court abused its discretion in denying appellants' motion for severance.

### VIII. B.K. Taylor—Fair Trial.

▮▮▮ Appellant, B.K. Taylor, contends that he was denied his right to a fair trial and due process of law when the government allowed to go uncorrected testimony by Jose Pena, Jorge Pena, and Guy Brown that they had not been involved in any criminal activity after they entered into their plea agreements. It is their contention that the government knew, or should

---

**5.** Rule 14 of the Federal Rules of Criminal Procedure states:

Rule 14. Relief from Prejudicial Joinder

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

have known, that this testimony was false. Moreover, B.K. Taylor contends that the district court erred in denying his motion to compel additional discovery on Penas' and Brown's involvement in subsequent criminal activity. It is well established that a government lawyer "has the responsibility and duty to correct what he knows to be false and elicit the truth." *Napue v. Illinois*, 360 U.S. 264, 270, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (citations omitted). Prosecutorial misconduct, however, does not always render a subsequent conviction illegal. An appellate court will overturn a conviction resting, in part, upon the knowing use of false testimony "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■■■■■ When a government lawyer elicits false testimony that goes to a witness's credibility, we will consider it sufficiently material to warrant a new trial "only when the 'estimate of the truthfulness and reliability of [the] given witness may well be determinative of guilt or innocence.'" *United States v. Anderson*, 574 F.2d 1347, 1356 (5th Cir.1978) (quoting *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972)). In this case, Taylor has failed to submit legally sufficient evidence that the government elicited false testimony, or knew or should have known that government witnesses Jose Pena, Jorge Pena, and Guy Brown gave false testimony. Taylor claims that the government was clearly put on notice that its witnesses were involved in criminal activities because appellant's motion to compel additional discovery "clearly framed that issue." Examination of Taylor's motion to compel additional discovery does not support this contention. The motion reveals that "four Latin males were apprehended by state authorities of St. Lucie County and Indian River County, Florida." The motion further states that "the incident had nothing whatsoever to do with the . . . instant prosecution." In paragraph 2 of Taylor's motion to compel additional discovery, he states:

Limited information indicates that the incident surrounded a drug transaction by the Penas and *possibly* Guy Brown, which would have antidated the indictment herein, and *very possibly* been after the entry of the negotiated pleas whereby these individuals became cooperating government witnesses. [Emphasis added.]

Taylor, however, does not venture to reveal to the court the source of this "limited information"; he snatches out of mid-air speculative and conjectural possibilities. For example, appellant states that "possibly Guy Brown" was involved in a drug transaction and that this incident "very possibly" could have occurred after the entry of the negotiated pleas. These bald allegations, in Taylor's motion, are not sufficient to impute knowledge to the government that its witnesses were actually involved in any subsequent criminal activity. Taylor has not shown that any of the government witnesses testified falsely; nor has he shown that the government's failure to correct the witnesses' alleged misstatements affected the jury's verdict. *See United States v. Agurs*, 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976). We hold that the district court did not abuse its discretion or err in denying appellant, Taylor's, motion to compel additional discovery. We further hold that neither the government's conduct nor the district court's denial of appellant's motion deprived appellant of a fair trial or due process of law.

IX. Wendell Cole—Judgment of Acquittal.

Appellant, Wendell Cole, contends that the district court erred in denying his motion for judgment of acquittal because the government did not prove one conspiracy as alleged in the indictment, but instead, proved the existence of multiple conspiracies. Thus, Cole contends that an impermissible variance exists between the charge and the proof at trial. Cole's challenge to the denial of his motion for judgment of acquittal is no more than a chal-

lenge to the sufficiency of the evidence. *See United States v. Gulledge,* 739 F.2d 582 (11th Cir.1984).

▮ To establish a conspiracy, the government must prove an agreement or common purpose to violate the law. *United States v. Watson,* 669 F.2d 1374, 1379 (11th Cir.1982); *United States v. Michel,* 588 F.2d 986, 994 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).[6] While each individual need not be privy to all the details of the conspiracy, or be aware of all the other conspirators, or participate in every stage of the conspiracy, each defendant must have joined the conspiracy intentionally. *United States v. Becker,* 569 F.2d 951, 961 (5th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). In reviewing this challenge to the sufficiency of the evidence, we must determine whether a jury could find beyond a reasonable doubt that a conspiracy existed, that Cole knew of it, and that he intentionally joined it. *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir. 1979) (en banc).

▮ As early as 1946, the Supreme Court held that where the evidence at trial proves the existence of multiple, independent conspiracies and the indictment alleges a single conspiracy, reversal of the defendant's conspiracy conviction is warranted, if the defendant's substantial rights have been injured by the variance. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In determining whether a single conspiracy existed, we must ask, "what is the nature of the agreement. If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one conspiracy." *United States v. Perez,* 489 F.2d 51, 62 (5th Cir.1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

▮ In determining whether a reasonable trier of fact could have found beyond a reasonable doubt that a single conspiracy existed, we consider three factors: (1) whether a common goal existed; (2) the nature of the criminal scheme; and (3) the overlapping of the participants in the various dealings of the conspiracy. *United States v. Brito,* 721 F.2d 743, 747 (11th Cir.1983) (citing *United States v. Watson,* 669 F.2d 1374, 1379–80 (11th Cir.1982)). This court will not reverse a jury's finding that a single conspiracy existed unless the evidence, viewed in the light most favorable to the government, could not permit reasonable jurors to have found, beyond a reasonable doubt, that a single conspiracy existed. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Examination of the evidence in light of the factors listed above reveals that each factor is amply satisfied. An abundance of evidence supports the jury's determination that a single conspiracy existed. The common goal of the conspiracy was the importation and distribution of marijuana into the United States. *See United States v. Watson,* 669 F.2d at 1380. The evidence also reveals that the conspiracy was manifested in a single, ongoing operation.

▮ The evidence establishes that Donald Raulerson headed this illegal venture. The conspirators accomplished their common goal by purchasing large loads of marijuana in Colombia, South America, transporting them to the United States aboard vessels or airplanes, and delivering the marijuana to various purchasers. Notwithstanding the fact that the identities of those participating in the offloading and onloading of the boats, airplanes, trucks, ships, and houses occasionally differed from load-to-load, the evidence clearly indicates that each, including appellant, Cole, knowingly, intentionally, and voluntarily participated in the illegal enterprise.

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

Finally, we detect an overlapping of the participants in the various dealings of the conspiracy.

The importation schemes and participants in this illegal venture varied from load-to-load. Howard Masters served as a direct partner with Donald Raulerson in the importation and distribution of marijuana in the Marathon operation. Larry Masters helped off-load marijuana imported into the United States during the Marathon operation. He helped weigh the marijuana prior to its sale and drove a truck loaded with marijuana away from the offload site. As the speedboats came in, B.K. Taylor directed the offloading crew, assisted in the offloading of the marijuana, and ordered the crew to "get your eyes adjusted to the dark; stay under cover." Taylor hung a light out on the dock for the boats coming in at night and went to Naples, Florida, to assist in the offloading of 50,000 pounds of marijuana from a "bunch of speedboats" to the back porch of a house. Additionally, Wendell Cole was an offloader at the Marathon site; he drove a load of marijuana to Naples, Florida; and, thereafter, he returned to Marathon, Florida, to help load other vehicles.

During the offloading and weighing of the marijuana in the Marathon operation, Stefanides went to a motel in Marathon, Florida, where Donald Raulerson, Howard Masters, and Billy Morris were staying. At that time, Raulerson told Stefanides that once they got the load into the house, his main concern was to disburse the load as quickly as possible.

Howard Masters employed small airplanes to fly marijuana from South America into south Florida. He directed an attempted importation which involved Dewey Brown and his son, Larry Masters. Howard Masters paid the pilots for their work and purchased airplanes for the drug smuggling trips. On one of these trips, Larry Masters had trouble with an airplane in South America. After this trouble, he went looking for "Enrique," who was Raulerson's South American marijuana supplier. After acquiring the marijuana to be smuggled into Florida and a suitable airplane, Larry Masters aided others in throwing marijuana out of the airplane at designated locations within the United States.

B.K. Taylor offloaded marijuana-filled airplanes on many occasions. Taylor also traveled to Colombia, South America, with $1 million to purchase marijuana. Howard Masters and Donald Raulerson gave most of the instructions and supplied the front money to finance the drug smuggling operations. *United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir.1981). Considering the facts in their totality, we conclude that a reasonable trier of fact could have found beyond a reasonable doubt, the existence of a single conspiracy whose goal was achieved through various drug smuggling ventures.

Even if the evidence did show that multiple conspiracies existed, we may not reverse Cole's conviction absent a showing that the variance between the indictment and the evidence adversely affected his substantial rights. *United States v. Brito*, 721 F.2d 743, 748 (11th Cir.1983); *United States v. Solomon*, 686 F.2d 863, 870 (11th Cir.1982). Cole fails to make this showing. Cole does not articulate any specific prejudice; he merely argues that his conviction should be reversed because "it is highly probable that the jury was confused by testimony concerning various combinations of defendants and boat loads, plane loads and millions of dollars." Succinctly stated, Cole argues that his trial with the other defendants, exposed him to the potential danger that the jury would not consider each defendant's guilt individually based on the evidence. We agree with Cole's assertion that this case involved a number of defendants. We, however, do not agree that the jury was confused.

Accordingly, we hold that Cole has not shown any prejudicial variance between the evidence and the indictment.

X. Admission of Tape Recordings.

Appellants, Wendell Cole and Larry Masters, contend that the district court abused its discretion in allowing videotape record-

ings into evidence. Specifically, Larry Masters asserts that portions of videotape 61 which were presented to the jury were not admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence.[7] Larry Masters also contends that the admitted portions of videotape 61 which were presented to the jury deprived him of his right to a fair trial and his right to confront witnesses against him. In addition, Wendell Cole argues that the district court erred in admitting into evidence the videotape recordings.

It is the unique function of the district court to determine the admissibility of evidence; admission of evidence is committed to the sound discretion of the trial court. *United States v. Duff,* 707 F.2d 1315, 1318 (11th Cir.1983). Accordingly, the decision of a district court to admit relevant evidence will not be disturbed by this court absent an abuse of discretion. *United States v. Russell,* 703 F.2d 1243 (11th Cir.1983). In *United States v. Biggins,* 551 F.2d 64 (5th Cir.1977), the former Fifth Circuit stated that the trial court has broad discretion in determining whether to allow a recording to be played before the jury.

The videotaped recordings consisted of conversations between various co-conspirators concerning drug smuggling and money laundering activities. The statements about money laundering constitute evidence inextricably intertwined with the government's evidence regarding the main narcotics transaction.

The district court found that this evidence was admissible because it was probative of the defendant's involvement in narcotics transactions. *See United States v. Wertz,* 625 F.2d 1128 (4th Cir.), *cert. denied,* 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980); *United States v. Schwartz,* 535 F.2d 160 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977); *United States v. Magnano,* 543 F.2d 431 (2d Cir.), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). Accordingly, admission of the videotape into evidence did not violate Rule 404(b) of the Federal Rules of Evidence.[8] *See United States v. Killian,* 639 F.2d 206, 211 (5th Cir. Unit A 1981) (citing *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979)).

Cole contends that the prejudice resulting from the admission of the videotapes far outweighed the probative value of the evidence. In support of this contention, Cole cites Rule 403 of the Federal Rules of Evidence.[9] This rule gives the district court discretion in excluding otherwise admissible evidence under specified circumstances. Rule 403, however, should be applied sparingly. *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979). We are persuaded that the district court struck the proper balance between the probative value of the tapes and

---

**7.** Rule 801(d)(2)(E) of the Federal Rules of Evidence provides:

Rule 801. Definitions

. . . .

(d) Statements which are not hearsay. A statement is not hearsay if—

. . . .

(2) Admission by party-opponent. The statement is offered against a party and is . . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

**8.** Rule 404(b) of the Federal Rules of Evidence provides:

Rule 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes

. . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**9.** Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the prejudice resulting to appellants. We reject appellants' contentions to the contrary. We find that the statements made concerning Larry Masters were made during the course of the conspiracy and in furtherance of the conspiracy. Correspondingly, we hold that the portions of videotape 61 which were presented to the jury were admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence. The conversations in question took place on October 28, 1980, and involved discussions on how to launder money obtained as a result of the marijuana conspiracy. Successful laundering was essential to the ongoing conspiracy. Hence, the conversations in this case, unlike those in *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), were made during the conspiracy and in furtherance thereof.

Finally, we find no merit in Larry Masters's contention that the admission of the video tapes and statements made thereon by his co-conspirators violated the confrontation clause of the sixth amendment. *See Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Finding no merit in any of appellants' contentions, we hold that the district court did not abuse its discretion in admitting the relevant portions of the videotape recordings into evidence.

## XI. Prosecutorial Misconduct.

Appellants, B.K. Taylor, Howard Masters, and Larry Masters, contend that the opening statement and closing arguments of the prosecutor in this case were improper. Appellants further contend that the prosecutor grossly misstated the facts during his closing argument, and therefore, their convictions should be reversed and the case should be remanded for a new trial. They claim that the prosecutor's prejudicial comments deprived them of a fair trial.

When determining whether a prosecutor's comments warrant the granting of a new trial, we consider: (1) whether the remarks were improper, and (2) whether they prejudicially affected substantive

rights of the appellants. *United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir.1983). The legal metes and bounds of a prosecutor's argument are defined by the evidence before the jury. Thus, a prosecutor must limit his comments to admissible evidence. *See United States v. Phillips*, 664 F.2d 971, 1030 (5th Cir.), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). On review, we determine whether the prosecutor's remarks were improper, and if so, whether they prejudicially affected any substantive right of appellants. *United States v. Kopituk*, 690 F.2d 1289, 1341 (11th Cir.1982).

### A. Opening Statement

Appellants, Howard Masters, Larry Masters, and B.K. Taylor, assert that the prosecutor usurped the authority of the court by discussing the application of evidence to the law and by making erroneous statements of the law during his opening statement. When the Assistant United States Attorney presented the opening statement on behalf of the government, the following colloquy ensued:

[AUSA]: But you will also need to keep in mind that all of the defendants are charged together with what is called a conspiracy. A conspiracy is simply an agreement to do something which is against the law.

In this case, to import marijuana, if you find in this case that there was a conspiracy and if you find in this case that these particular defendants or various other defendants participated in this conspiracy, then it is appropriate to consider all of the acts, all of the co-conspirators acts against and were done by each of the defendants.

[Defense lawyer]: Your Honor, I object to that. I think that is an instruction on the law that the court can give the jury. That is not appropriate opening statement as to what the government is going to show in this case.

The Court: I will sustain as to that. I will instruct the jury as to the law of

conspiracy and they will follow that instruction, of course, as to the principle. Later, the district court properly instructed the jury on the law of conspiracy. While the prosecutor's explanation of the law of conspiracy may have been improper and substantively faulty, we find that these comments did not prejudice or adversely affect any substantive rights of the appellants. Accordingly, we hold that the district court properly denied appellants motion for mistrial on this ground.

■ Next, appellants contend that the prosecutor made improper remarks about the defendants, as follows:

[AUSA]: There are three other people that are listed in this indictment that are actually going to be appearing here as witnesses. They are going to testify about what they did and about what other people did in the organization.

And the people you may not like are a lot of people that you may not want to have in your living room. But they were there and they were witnesses and it would be nice to have the Pope here—

[Defense lawyer]: Objection to that argument. It is not opening statement.

[Defense lawyer]: Objection to this argument.

The Court: Sustained.

The prosecutor's statements, in the context of the entire trial, are not sufficiently prejudicial to warrant reversal. We, therefore, hold that the district court did not abuse its discretion in denying appellants' motions for a new trial.

■ Appellants further contend that the prosecutor misrepresented the character and purpose of the video tape recording evidence. The opening statement proceeded as follows:

[AUSA]: You will see from the tapes the problem that is had and the reason for this service. Drug money often, almost always, is in small denominations of tens and twenties. Often times the amount of money involved is a million dollars. Sometimes it is half of that. But a million dollars in ten dollars bills consists of

100,000 ten dollar bills and occupies a space of three large suitcases.

And it generally takes six to eight hours simply to count.

[Defense lawyer]: I object on the grounds that it is not a representation of what the evidence is going to show in the case. This is counsel's argument and this is the third time he has

The Court: Sustained.

[Defense lawyer]: And counsel should be admonished to proceed to opening statement as to what he intends to show.

The Court: Sustained. You are to state what you hope the evidence will show.

While the prosecutor's comments were improper, we conclude that they were not sufficiently prejudicial to warrant the granting of a new trial. We hold that the district court did not abuse its discretion in denying appellants' motion for a new trial on this ground.

■ During the prosecutor's opening argument, the following exchange took place:

[AUSA]: ... As I pointed out, it is very straightforward, but due to the number of defendants, it is going to take that period of time in order that you can hear about them. We are sorry for that. It is a very important case for the government.

[Defense lawyer]: Objection.

[Defense lawyer]: Objection.

The Court: Sustained. There is no consideration as to whether the case is important or not important. That is not an issue in this case.

[Defense lawyer]: Your Honor. I object to the reference that it will be long and boring because if the government did not want it to be long and boring, they did not have to bring in all of the defendants.

The Court: I will overrule as to that. But there should be no reference as to whether it is an important case or not. That is not an issue at all. The jury will disregard that.

Again, the prosecutor's comments were improper. Nonetheless, these comments did not prejudicially affect any of the appellants' substantive rights. *See United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981); *United States v. Garza*, 608 F.2d 659, 663 (5th Cir.1979). The court's instruction to the jury immediately following defense counsel's objection to the comments cured any error that may have occurred as a result of the comments. Correspondingly, we hold that any error that may have resulted from the prosecutor's comments as to the importance of the case was harmless. *United States v. Bright*, 630 F.2d 804, 828–29 (5th Cir.1980).

**B. Closing Argument**

█ Appellants contend that the prosecutor should not have made reference to the "money laundering" aspects of the case. After the court instructed counsel for both sides not to pursue the issue of "money laundering" because this offense was not charged against appellants, counsel for one or more of the defendants used the term during cross-examination. Sometime thereafter, defense counsel objected to the Assistant United States Attorney's use of the term during closing argument. The following exchange ensued:

[AUSA]: I want to make it real clear about the money laundering. I intend to use that term because it was utilized in this trial by Mr. Maddox's lawyer. And we all thought about it. And we all talked about it. And we kept it out and then Your Honor has allowed them to get into it on cross-examination. Now, it is in evidence and I am entitled to discuss it.

The Court: I think that is correct. I, of course, will charge the jury that they are on trial only for those offenses that are set forth in the indictment and money laundering is not set forth in the indictment to be considered by the jury.

[Defense lawyer]: Will you say that? That money laundering is not a part of this case?

The Court: I will tell them that.

After the jury returned and during the prosecutor's closing argument, the court instructed the jury:

The Court: Let me give you one further instruction. Possession of cash and the exchange of such cash for cashier's checks are items in evidence that you may consider but money laundering as such is not an offense charged in this indictment and other matters before you on trial today. And, therefore, you may not consider that element itself separately as activity in the course of your deliberations.

The prosecutor's mention of the term "money laundering" can fairly be described as nothing more than a response to defense counsel's use of the term on cross-examination. Assuming that the prosecutor's reference to "money laundering" was improper, it was an isolated instance which was cured by a strong cautionary instruction. *See United States v. Nickerson*, 669 F.2d 1016, 1020 (5th Cir. Unit B 1982) (citing *United States v. Lichenstein*, 610 F.2d 1272 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980)). The record reveals that the district court issued a prompt and strong curative instruction to the jury. The district court properly denied appellants' motion for a mistrial.

**C. Other Claims of Misconduct**

We have examined appellants' arguments that prosecutorial misconduct so permeated the entire trial that appellants were denied their right to a fair trial, that reversible prosecutorial misconduct occurred during rebuttal, that the prosecutor vouched for the credibility of government witnesses, and that the prosecutor personally attacked the motivation and integrity of defense counsel. Finding no reversible error, we affirm the district court on each of these issues.

█ We agree with appellants that the prosecutor's gratuitous remark that he believed the testimony of Guy Brown was improper. We, however, are not compelled to reverse appellants' convictions because the district court thoroughly and carefully

instructed the jury on how to treat the prosecutor's improper remarks, thereby curing any prejudice. *See Gradsky v. United States*, 373 F.2d 706, 711 (5th Cir. 1967). *Hanley v. United States*, 416 F.2d 1160, 1166 (5th Cir.1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970). In sum, we find that the prosecutor overstepped the bounds of proper argument, but the district court's instructions purged the case of any and all prejudice. We have examined appellants' other contentions concerning the prosecutor's conduct. Each of these contentions is meritless. Accordingly, the district court's ruling on appellants' motion for a new trial is affirmed.

XII. Appellants Challenge to the Makeup of the Grand Jury.

 Appellants Larry Masters and B.K. Taylor contend that the district court erred in denying their challenges to the composition of the grand jury which returned the indictment. Appellants have not shown, and the record does not reveal, that the district court committed any reversible error. Accordingly, we hold that the district court did not err in denying appellants' motion to dismiss on this ground.

Conclusion

After a thorough review of the record and briefs in this case, we hold: (1) that sufficient evidence exists to convict appellants Howard and Larry Masters of conspiracy to import marijuana; (2) that sufficient evidence exists to convict appellant Larry Masters of attempted importation of marijuana; (3) that the district court did not err in denying appellants' motion to inspect the grand jury records; (4) that the superseding indictment which increased charges against Larry Masters and added Howard Masters did not violate any constitutional rights of appellants; (5) that the district court did not err in denying appellant Howard Masters and B.K. Taylor's motion to dismiss Count II of the indictment; (6) that the district court properly denied appellants' motion for a bill of particulars; (7) that sufficient evidence exists

from which a reasonable jury could have found beyond a reasonable doubt that the substance charged in Count VI of the indictment was marijuana; (8) that the district court properly denied appellant Cole's request for a judgment of acquittal on the theory of multiple conspiracies; (9) that appellant B.K. Taylor was not deprived of due process of law or his right to a fair trial; (10) that the district court did not err in denying appellants' motions for severance; (11) that the district court did not abuse its discretion when it admitted into evidence portions of the video tape recordings; (12) that the district court correctly concluded that appellants were not entitled to a mistrial based on prosecutorial misconduct; and (13) that appellant Taylor's challenge to the makeup of the grand jury is without merit.

Accordingly, the judgments of the district court are affirmed.

**AFFIRMED.**