843 F.2d 1388
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara Jean BATES, a/k/a Barbara Jean Bullock, a/k/a
Barbara Jean Johns, Defendant-Appellant.
 No. 87-5079.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 3, 1988.
Decided: April 4, 1988.
 
 Robert T. Durkin, Jr., for appellant.
 James Christopher Savage, Special Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Barbara Jean Bullock appeals from her conviction for conspiracy to distribute heroin in violation of 21 U.S.C.A. Sec. 846 (West 1981). We affirm in part, vacate in part, and remand with instructions.[1]
 
 I.
 
 2
 Bullock was charged with participation in a heroin distribution network in Baltimore, Maryland. The indictment identified her as Barbara Jean Bates, a/k/a Barbara Jean Bullock, a/k/a Barbara Jean Johns. Although she was indicted with numerous co-conspirators, she was tried separately.
 
 
 3
 At trial the government presented testimony from two of the co-conspirators, James Canady and Derrick Fallon, regarding the network's operations. Canady testified that the conspirators obtained heroin from New York in groups of 800 to 1,000 "quarter bags," and that once the bags reached Baltimore, Fallon distributed them to several people, including "Barbara Jean." Canady did not know Barbara Jean's last name, but testified that he knew she was the sister of Andrew and Gerald Bates. According to Canady, Bullock would generally pay an individual named James Elfe for the drugs or, on occasion, send Western Union moneygrams made payable to James Green, an alias used by Canady. His testimony was corroborated by the introduction of Western Union moneygrams purchased in the name of Barbara Jean Bullock and made payable to James Green.
 
 
 4
 Fallon testified that he delivered heroin to Bullock approximately twice a month over the period of her involvement. He further testified that he provided Bullock with several ounces of heroin in addition to "quarter bags." In identifying records seized by the government, Fallon stated that the notation "B.G." in the records indicated the distribution to Bullock.
 
 
 5
 The government also introduced evidence of intercepted telephone conversations. In several of these conversations Bullock was identified as a participant. Some were traced to the home of Bernice, Andrew, Gerald and Michael Bates, the mother and brothers of Bullock. Other conversations were traced to the residence of Ralph Johns in Virginia Beach, where Bullock admittedly resided at various times.
 
 
 6
 Bullock was convicted by a jury and sentenced to 12 years imprisonment. The district court recommended that this term of imprisonment be consecutive to any state term of imprisonment not yet imposed.
 
 
 7
 Bullock raises three contentions of error on appeal. First, she asserts that the court erred in allowing the jury to receive written materials listing her two aliases. Next, she maintains that a mistrial should have been declared due to prosecutorial misconduct in misstating the evidence in closing argument. Finally, she contends that the court erred in recommending that her 12-year sentence run consecutively to any state sentence not yet imposed.
 
 II.
 
 8
 Evidence of a defendant's use of an alias is admissible if relevant to identification of the defendant in connection with the acts alleged. United States v. Clark, 541 F.2d 1016, 1018 (4th Cir.1976). The government must offer proof of the alias, however, or it is subject to being stricken. Id. Evidence of the alias should relate in some manner to the acts charged and may not be used by the government merely to show that the "defendant [has] some sort of history of or reputation for unsavory activity." United States v. Williams, 739 F.2d 297, 299 (7th Cir.1984).
 
 
 9
 Bullock contends that the government did not offer sufficient evidence to justify references to "Bates" and "Johns." To the contrary, testimony revealed that Bullock was known to be the sister of Andrew and Gerald Bates, and that she resided at various times in the Bates' household. Evidence also connected Bullock to the residence of Ralph Johns through the intercepted telephone calls, and Bullock conceded that she resided at various times with Johns. Her relationship with the Bates family and with Ralph Johns was clearly established by evidence which she does not contend was inadmissible. Since these relationships were properly before the jury, evidence of the aliases was not prejudicial.
 
 
 10
 Bullock also alleges error because the jury was provided with transcripts of intercepted telephone conversations identifying one of the speakers as Barbara Jean Bates. She contends this improperly inferred guilt by association. The district court instructed the jury to disregard the fact that the transcripts listed the name Barbara Jean Bates as one of the parties to the conversation. The court further charged that determination of the identity of those participating in the telephone calls was a matter to be determined by the jury independent of any names listed on the transcript of the conversation.
 
 
 11
 Bullock further claims the district court erred when it refused to strike the two aliases from the verdict form and indictment. The inclusion of the aliases on these forms likewise does not require reversal. The district court instructed the jury that the indictment was not evidence and could not be considered as such when deliberating on its verdict.
 
 III.
 
 12
 Bullock contends that the district court erred in refusing to declare a mistrial due to prosecutorial misconduct during closing argument. The Assistant United States Attorney referred to Bullock's aliases several times in his argument and he also stated that she was the wife of Ralph Johns. The government agrees that there was no evidence at trial demonstrating that Bullock and Johns were legally married or lived in a common law relationship.
 
 
 13
 In assessing whether the argument of the prosecutor requires reversal, we consider the propriety of the comments and whether they prejudiced the defendant. United States v. Cole, 755 F.2d 748, 767 (11th Cir.1985). To justify reversal, prosecutorial misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Blevins, 555 F.2d 1236, 1240 (5th Cir.1977), cert. denied, 434 U.S. 1016 (1978).
 
 
 14
 Bullock's assertion that the reference to her aliases required a mistrial is simply a reiteration of the argument previously addressed. The reference in closing argument identifying Bullock as the wife of Ralph Johns, while improper, clearly does not mandate reversal. The district court immediately instructed the jury to disregard the statement because there was no evidence establishing this fact, and similar curative instructions were given at the conclusion of the government's closing argument.
 
 IV.
 
 15
 At the time of sentencing, Bullock faced a possible parole revocation in the Commonwealth of Virginia. The district court sentenced Bullock to a 12-year term of imprisonment stating that "the judgment will provide that the twelve year period will be consecutive to any state time, and not concurrent therewith." The judgment and commitment order also stated that the court recommended the term to be consecutive to any state sentence. Bullock maintains that the federal sentence was illegal since the Virginia sentence had not yet been determined. She seeks a remand for resentencing.
 
 
 16
 A federal court may not impose a sentence on a federal prisoner and require the sentence to be served consecutively to a possible term of imprisonment which may result in the future from the revocation of state parole. When Bullock was sentenced she was a federal prisoner and the federal sanction began to run immediately. Whether her state parole will be revoked and, if revoked, whether the state time will be served concurrently or consecutively to the federal sentence is a matter for the Commonwealth of Virginia to determine. The language of the district court was surplusage. Even though the defendant was not prejudiced by this language we remand with instructions that it be striken from the judgment and commitment order.
 
 
 17
 AFFIRMED in part, VACATED in part, and REMANDED with instructions.