UNITED STATES of America,
Plaintiff-Appellee,

v.

Mauro CANTU, Jr., a/k/a Mario Cantu,
Defendant-Appellant.

No. 76–4039.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1977.

Peter Torres, Jr., San Antonio, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy Morgan Jahn, W. Ray Jahn, John M. Pinckney, III, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Mauro Cantu, also known as Mario Cantu, was convicted by a jury of conspiracy and of two substantive counts of shielding illegal aliens from detection, violations of 18 U.S.C. § 371 and 8 U.S.C. § 1324. He was sentenced to a suspended prison term and a fine. Cantu appeals alleging numerous errors prior to and during trial. We have considered Cantu's points on appeal and find them to be without merit, and accordingly affirm the judgment of the district court.

In June of 1976 Cantu was proprietor of Mario's Restuarant in San Antonio, Texas. On information that Cantu employed aliens illegally in the United States at his restaurant, agents of the Immigration and Naturalization Service visited the restaurant on the morning of June 18, 1976 to question the employees about their residence status. Cantu refused to admit the agents without a search warrant. The agents remained outside the restaurant to await the arrival of a warrant.

One of the illegal aliens employed by Cantu on June 18 was Lucio Hernandez. Hernandez had worked for Cantu during a previous illegal visit to the United States. When the INS agents arrived on the morning of the 18th, Hernandez took a seat in the dining room of the restaurant. Cantu approached a patron, Billy Morton, and asked him to give a ride to one of the employees. Morton agreed, and Cantu then pointed Morton out to Hernandez. Morton joined Hernandez, but the two could not converse due to the language barrier. A witness testified that Cantu made the arrangements with Morton. As Morton prepared to leave he indicated to Hernandez to join Morton's sons in a group. They left by the front door in single file. The agents approached Hernandez in the restaurant parking lot, ascertained his illegal status, and arrested him.

Another illegal alien employed by Cantu on June 18 was Armando Bustamante-Hernandez (referred to herein as Bustamante). Bustamante also had been employed by Cantu during a previous illegal visit to the United States. When the agents arrived on the 18th Bustamante changed from his waiter's costume into street clothing, and attempted to hide within the restaurant. Bustamante testified that Cantu told him not to hide, but to take a seat in the restaurant dining room. Bustamante further testified that Cantu then approached a patron, Ignacio Perez, and asked Perez to give Bustamante a ride into town. Perez testified that he was aware of the presence of the INS agents, aware that Bustamante was Cantu's employee, that he was aware that Cantu was reputed to employ illegals, and that it occurred to him that Bustamante might be illegal. Perez joined Bustamante

and indicated that Bustamante was to leave with him. Bustamante testified that this was confirmed by a gesture from Cantu. As Bustamante and Perez passed the cashier's booth Perez obtained a toothpick which he gave to Bustamante, and Bustamante put the toothpick in his mouth. The two then left the restaurant together. In the restaurant parking lot agents approached Bustamante, ascertained his illegal status, and arrested him.

A third illegal alien employed by Cantu successfully evaded the agents at the restaurant by leaving with patrons. A fourth was arrested while taking garbage out a back door. A fifth was arrested within the restaurant after the search warrant arrived.

Cantu was indicted by a federal grand jury for conspiracy to "wilfully and knowingly attempt to shield" Bustamante and Hernandez, illegal aliens, in contravention of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(3). Section 1324 provides in pertinent part:

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

. . . . .

(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation;

. . . . .

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony . . .: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

Billy Morton and John Doe (Ignacio Perez) were named in the indictment as unindicted coconspirators, and were granted immunity from prosecution. The indictment charged as a conspiracy that Cantu held conversations with Morton and Doe/Perez to plan to enable "certain illegal aliens" to depart the restaurant under the guise of customers. The two substantive counts of the indictment charged attempts to "shield from detection" Hernandez and Bustamante pursuant to the charged conspiracy.

The cause was tried on September 7 and 8, 1976, and on September 9 the jury returned verdicts of guilty against Cantu on the conspiracy count and on both substantive counts. The district judge sentenced Cantu to a total of four years' imprisonment, suspended, five years' supervised probation, and a fine of $3,000, on all counts. Cantu then appealed.

On appeal Cantu contends that the indictment under which he was prosecuted was faulty; that the trial judge erred in denying various pretrial motions and in quashing certain subpoena; that there was insufficient evidence presented at trial to sustain a conviction under the indictment; and that the trial judge charged the jury incorrectly. We have examined each of Cantu's points on appeal and find them to be without merit.

■ *Adequacy of the indictment.* Cantu contends that the evidence required to prove the conspiracy count in this case is the same as that required to prove the substantive counts, and that the fifth amendment forbids trial on separate counts for the same acts. The test to determine whether two alleged offenses are in fact one is whether each provision requires proof of a fact which the other does not. It is enough if there is one element required to prove the offense charged in one count which is not required to prove the other. *United States v. Bruce,* 5 Cir., 1973, 488 F.2d 1224, 1229–30. A conviction for conspiracy under the first count of the indictment in this case requires an agreement to conspire, 18 U.S.C. § 371. "The essence of the crime of conspiracy is the agreement rather than the commission of the objective substantive crime. Conspiring to commit a

crime is an offense separate and distinct from the crime which may be the object of the conspiracy." *United States v. Nims,* 5 Cir., 1975, 524 F.2d 123, 126, *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385. The required proof of agreement is an element not required to be proved for the substantive counts under 8 U.S.C. § 1324(a)(3). The conspiracy does not merge, therefore, with the substantive counts as argued by Cantu.

*Denial of motion to dismiss the indictment.* Cantu contends that the district judge erred in refusing to grant Cantu's motion to dismiss the indictment. Cantu asserts that the word "shield" in the indictment is overbroad, that the grand jury which returned the indictment was illegally composed, and that the indictment against Cantu resulted from discriminatory enforcement of the immigration laws.

■ Cantu asserts that "men of common knowledge would naturally have to guess at the meaning of [shield] and would differ as to its application as did counsel for both sides and the trial judge in the instant case." We have held, however, that indictments are valid where they track the language of the appropriate statute unless "the statute omits an essential element of the offense." *United States v. Thevis,* 5 Cir., 1973, 484 F.2d 1149, 1152, *cert. denied,* 419 U.S. 886, 95 S.Ct. 158, 42 L.Ed.2d 129 (1974). In this case, the word complained of, "shield," is taken directly from the statute and it does not appear that the statute omits any essential element of the offense. Therefore, the choice of language in the indictment does not render the indictment invalid.

Cantu asserts that the grand jury which indicted him did not constitute a fair and representative cross section of the community. Cantu concedes in his brief on appeal that he did not carry his burden to make a prima facie case of illegal jury composition but asserts that although he "sought through discovery to obtain the factual materials necessary for proof and specifically asked that he be permitted to inspect and copy the jury questionnaire forms" his discovery request was denied by the district judge. Cantu asserts that this denial was error. The record shows that in denying Cantu's motion for discovery of the jury questionnaire forms the district judge informed Cantu in his order of August 16 that Cantu was "free without further order of this Court to examine the records which the United States District Clerk keeps in the regular course of business concerning the identity of those persons making up both the present and past Grand and Petit Juries." Thus this point of error is clearly without merit.

Cantu asserts that he has been the target of discriminatory enforcement of the laws in contravention of the fourteenth amendment and that the district judge erred both in overruling a motion to dismiss without taking evidence on this issue, and in granting the government's motion in limine precluding Cantu from presenting testimony on the issue. In support of this argument Cantu cites *United States v. Falk,* 7 Cir., 1973, 479 F.2d 616. In *Falk* relief was granted to the defendant by the court of appeals after a district court had convicted Falk of failing to possess a draft card. The court found that there were "several indications" that Falk had been singled out for prosecution because of his active involvement in advising others on methods of legally avoiding military service and in protesting American actions in Vietnam. This infringement on Falk's first amendment rights was found to be "invidious discrimination which cannot be reconciled with the principles of equal protection." 479 F.2d at 624.

■ Cantu asserts that other employers of illegal aliens are not being prosecuted under section 1324, and that in effect his own prosecution is designed to chill his first amendment rights as a member of CASA, an organization assisting illegal aliens in this country. In his motion to dismiss Cantu identifies businesses which he alleges employ illegal aliens, none of which has been charged with "shielding." Section 1324, however, explicitly exempts employment of illegal aliens from its strictures.

An assertion that other employers employ aliens is therefore not equivalent to an assertion that another "shields" aliens. Cantu makes no assertion and offers no proof that other employers shield aliens in the manner of which he is accused or in any other. Therefore, Cantu has made out no prima facie case of discriminatory enforcement, and the trial judge did not err in dismissing his motion.

■ *Denial of motion for a bill of particulars.* Cantu asserts that the trial judge erred in overruling his motion for a bill of particulars. The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense and to minimize surprise at trial, *United States v. Sherriff*, 5 Cir., 1977, 546 F.2d 604, 606; also, to enable double jeopardy to be pleaded in case of a later prosecution, *United States v. Mackey*, 5 Cir., 1977, 551 F.2d 967, 970. Whether to grant a motion for such a bill is within the discretion of the trial judge and this discretion will be overturned only upon a showing that the defendant was actually surprised at trial, *Mackey, supra*, 551 F.2d at 970, or was otherwise prejudiced, *United States v. Bearden*, 5 Cir., 1970, 423 F.2d 805, 809, *cert. denied*, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970), so that a clear abuse of discretion by the trial judge is shown.

■ In the present case the evidence consisted mainly of reports by witnesses of conversations in which Cantu participated, of activity in Cantu's restaurant which he witnessed and of the arrests in the restaurant parking lot, which he also witnessed. Thus Cantu "could hardly have been surprised by the government's proof at trial." *United States v. Pena*, 5 Cir., 1976, 542 F.2d 293, 294. Cantu does not attempt to show surprise or other prejudice resulting from the denial of the bill. Accordingly, there was no abuse of discretion, *United States v. Pena, supra*, 542 F.2d at 294. The record discloses that Cantu was fairly apprised of the government's theories and particulars upon which each count of the indictment was based. "He was entitled to no more."

*United States v. Bearden, supra*, 423 F.2d at 809.

■ *The motion for discovery.* In paragraph 23 of his motion for discovery Cantu moved "for an order to examine the questionnaires submitted by Grand Jurors called for Grand Jury service in the Western District of Texas for the preceding five (5) years and similarly requests that he be permitted to examine and inspect and copy the lists of petit jurors called for the instant case and those called for the preceding four (4) years." Cantu asserted that this discovery was necessary to allow him to show that the grand jury which indicted him did not represent a fair cross section of the community. In his order of August 16 in response to Cantu's discovery motion the district judge said that

the defendant is free without further Order of this Court to examine the records which the United States District Clerk keeps in the regular course of business concerning the identity of those persons making up both the present and past Grand and Petit Juries. However, in the present posture of the case, the Court does not recognize any necessity for the defendant to examine the Questionnaires submitted by Grand Jurors called for Grand Jury service in the Western District of Texas for the preceding five years and the similar request regarding the Petit Jurors for the previous four years.

Cantu now asserts that his request for discovery of jury information was denied by the district judge, and that this denial was error. That portion of the district judge's order quoted above shows that he denied only Cantu's request for questionnaires returned by juries in past years. Cantu challenges only the juries which considered his case. We agree with the district judge that questionnaires returned by past juries are not necessary in the present posture of this case. To deny discovery of past jury questionnaires was not error in the circumstances.

■ *The supplemental motion for discovery.* Cantu in a supplemental motion

for discovery sought production of the immigration files of Hernandez, Bustamante and of "any and all aliens who will testify against the defendant Mario Cantu in this case." In his motion Cantu offered only the bald assertion that "this discovery is essential to the preparation of their [sic] defense herein." The district judge properly exercised his discretion in denying Cantu a bill of discovery for immigration files. *See* 5 U.S.C. § 552(b).

◼ *Alleged Brady violation.* Cantu asserts that the government possessed prior to trial an exculpatory statement made by Morton, which was not revealed to Cantu, thus violating the principles of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In his original discovery motion Cantu requested production of "all statements made by witnesses in this case . . . ." In response to this motion the district judge ordered that "[a]ny materials requested by the defendant in his Motion for discovery which fall under the requirements of the Jencks Act or *Brady v. Maryland* shall be made available to the defendant at the appropriate time." Cantu asserts that the Morton statement was never made available to him, and that he was thereby denied a fair trial.

The record contains a government file memorandum reflecting a government investigator's interview with Morton. The memo indicates that Morton told the investigator that Hernandez himself asked Morton for a ride to town, and that Cantu did not make this request of Morton. The transcript of Morton's testimony before the federal grand jury also appears in the record. Morton testified before the grand jury as follows:

And to get the record straight, I'm under oath, Mr. Cantu, Mario, had asked me if I would give one of his men a ride to town.

Morton was not called as a witness by either side during the trial, although the record reflects that he was present and available to be called.

Cantu made the alleged suppression of Morton's statement to the investigator a basis of his motion for a new trial after the verdict was returned. This motion was argued to the district judge on September 27, 1976. Morton was sworn as a witness at this hearing. During the hearing Morton testified in response to a question from Cantu's attorney, "Mr. Cantu approached me and asked me if I would be courteous or kind enough to take one of his waiters to town." Shortly after, asked about the statement which he had given to the investigator, Morton testified,

Secondly, he asked me if Mr. Cantu asked me to take Emilio out of the restaurant, and I said no, he did not. That was a false statement of course.

It thus appears that Morton's statement to the investigator was not exculpatory as to Cantu, but could have been useful to the defense only to impeach Morton had he been called. The government was aware that Morton had repudiated his statement to the investigator in sworn testimony before the grand jury, before receiving Cantu's request for *Brady* material, and therefore was aware that the earlier statement was not exculpatory as to Cantu. Morton has now twice confirmed this repudiation under oath. The government's failure to provide the statement to Cantu under these circumstances did not reduce the trial to one which did "not comport with standards of justice." *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1197.

◼ *Denial of the motion to suppress evidence.* Cantu asserts that he was arrested and charged on the basis of illegally obtained evidence, and that the trial court erred in denying his motion to suppress the testimony of the aliens detained at Cantu's restaurant and "all other fruits of illegal search." The indictment charging Cantu is based upon the detention of aliens in Cantu's restaurant parking lot. A parking lot is a public place. *United States v. Sherriff, supra,* 546 F.2d at 607; *see United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). This assignment of error is without merit.

◼ *Denial of a pretrial conference.* Cantu contends that the district judge erred

**1180**

in not granting a pretrial conference "to consider proper disposition of a panoply of motions which were filed by Appellant" under Fed.R.Crim.P. 17.1. In support of this motion Cantu cites *United States v. Falk, supra.* The citation to *Falk* is inapposite, since in that case the remand was for an evidentiary hearing on Falk's allegation of discriminatory prosecution. 479 F.2d at 623–24. Whether to grant a pretrial conference is in the discretion of the district judge. We find no abuse of this discretion in the present record.

■■■ *Sufficiency of the evidence.* Cantu contends that there was insufficient evidence presented to support a guilty verdict under the conspiracy or substantive counts of the indictment. Concerning the conspiracy count, the record reflects sufficient evidence from which the jury could correctly conclude that Morton and Perez entered into agreements with Cantu to perform acts which they knew were illegal. As to the substantive counts, Cantu asserts that because he did not instruct his alien employees to "hide" and because they left the restaurant by the main door in full view of the INS agents, there was no evidence of illegal shielding under the statute. 8 U.S.C. § 1324 provides penalties for any person who

> willfully or knowingly . . . attempts to conceal, harbor, or shield from detection, in any place . . . any alien . . . .

Cantu argues that because Hernandez and Bustamante were arrested outside rather than inside the restaurant, that the "in any place" requirement of the statute is not fulfilled. We reject this reading of the statute. Clearly the words "in any place" are meant to be broadly inclusive, not restrictive.

■■■ Cantu further argues that Congress in enacting section 1324 intended to proscribe only activities which were "part of the smuggling [of aliens] chain of events." This argument was recently offered to the Second Circuit, which, after reviewing the statutory history of section 1324, concluded that "there was no suggestion that only

conduct forming part of the smuggling process should be proscribed." *United States v. Lopez,* 2 Cir., 1975, 521 F.2d 437, 440, *cert. denied,* 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368 (1976). We agree with the conclusion in *Lopez* that section 1324 does not prohibit only smuggling-related activity, but also activity "tending substantially to facilitate an alien's 'remaining in the United States illegally.'" 521 F.2d at 441.

■■ *Jury instruction as to meaning of "shield."* Cantu requested that, in charging the jury concerning the meaning of "shield" as used in section 1324, the district judge include as a synonym the word "hide." The judge declined to include "hide," and Cantu contends that this refusal was error. Although "shield" and "hide" may in some contexts be synonymous, in the context of section 1324 they are not. Section 1324 forbids attempts "to conceal, harbor, or shield from detection." Were "shield from detection" used synonymously with "hide" then "conceal" would be redundant. Therefore, the district judge did not err in omitting from his charge "hide" as a synonym for "shield from detection."

*Other errors assigned.* Cantu asserts that the district judge erred in quashing subpoena naming Richard M. Nixon and others as associates in bringing an illegal alien into the United States; in denying Cantu's motions for continuance; and in failing to recuse himself. We have considered these points and find them to be without merit.

All of Cantu's points on appeal having been considered and rejected, we affirm the judgment of the district court.

AFFIRMED.