UNITED STATES of America, Appellee,

v.

Noe Jay SANCHEZ, Appellant.

No. 90–2095.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1991.

Decided March 9, 1992.

Edward J. Ennis, West Des Moines, Iowa, argued and Ted Breckenfelder, Moline, Ill., for appellant.

Mary C. Luxa, Des Moines, Iowa, argued (Gene W. Shepard and Richard L. Richards, on brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Noe Jay Sanchez appeals from convictions in two separate trials. Final judgments in the two trials were handed down on June 19, 1990. In the first trial, Sanchez was convicted on one count of conspiracy in violation of 18 U.S.C. § 371, three counts of concealing or harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(C), and six counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). In the second trial, Sanchez was convicted on one count of conspiracy in violation of 18 U.S.C. § 371, five counts of creating and supplying false documents for use in making immigration applications in violation of 8 U.S.C. § 1160(b)(7)(A)(ii), and six counts of filing false immigration applications in violation of 8 U.S.C. § 1160(b)(7)(A)(i). Sanchez was tried in these cases together with his wife, Leanna, whose convictions we have already affirmed. *United States v. Sanchez*, 927

F.2d 379 (8th Cir.1991). Noe Sanchez raises several of the same issues that Leanna Sanchez raised in her appeal, and our opinion in the earlier case controls our decision on those issues. We find the new arguments that Sanchez has raised meritless. Accordingly, we affirm his conviction.

At trial, the government presented the following evidence: Sanchez and his wife met with several illegal aliens at a restaurant in Aurora, Illinois in July 1989. Sanchez told the aliens that if they worked on a farm for one day, he would be able to obtain immigration papers for them. In exchange for payment, Sanchez provided each alien with a "letter of representation," stating that Sanchez was representing them for the purpose of obtaining immigration documentation. Between July 15, 1989 and July 29, 1989, Sanchez arranged for transportation of the aliens to and from employment detassling corn at farms near Monmouth, Illinois.

Sanchez also assisted illegal aliens in applying for adjustments of their immigration status under the Special Agricultural Worker (SAW) program of the Immigration and Naturalization Service (INS). The SAW program permitted illegal aliens to apply for adjustment of their status if they could prove that they had performed agricultural work for ninety days in 1984, 1985, and 1986. Under the SAW program, the aliens had to file an "I–700" application form and "I–705" affidavits from their previous employers with the INS. The government alleged that in exchange for anywhere from $300 to $800, Sanchez would provide aliens with falsified I–700 applications and I–705 affidavits.

A. Admissibility of Videotaped Depositions

■ Sanchez first argues that the introduction at trial of videotaped depositions of material witnesses denied him a fair trial because the depositions were taken prior to his indictment and arraignment. The attorney who represented both Noe and Leanna Sanchez at the depositions, however, testified that they had consented to use of the videotapes. In Leanna Sanchez's appeal,

we held that this constituted a waiver of her right to object to introduction of the videotapes. *Sanchez,* 927 F.2d at 378. Noe Sanchez therefore waived his right to object, and the district court properly admitted the videotaped depositions into evidence.

### B. Admissibility of Andrade Testimony

 Sanchez next argues that the district court should not have admitted the testimony of Jose and Cindy Andrade. The government introduced the Andrades' testimony as evidence of other wrongful acts offered to prove motive, intent, and a common scheme or plan. Fed.R.Evid. 404(b). Evidence of other wrongful acts is admissible if it is relevant to a material issue; is more probative than prejudicial; and "the other acts are similar in kind and close in time to the crime charged." *United States v. O'Connell,* 841 F.2d 1408, 1422 (8th Cir. 1988); *see also United States v. Ratliff,* 893 F.2d 161, 164 (8th Cir.1990) (evidence of prior wrongful acts admissible to show common scheme or plan), *cert. denied,* —— U.S. ——, 111 S.Ct. 115, 112 L.Ed.2d 85 (1990). There must also be sufficient evidence to support a finding by the jury that the defendant committed the prior acts. *See Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The trial court has broad discretion to admit evidence under Fed. R.Evid. 404(b); we will reverse the trial court's decision only when "it is clear that the evidence had no bearing on any of the issues involved." *United States v. O'Connell,* 841 F.2d 1408, 1422 (8th Cir.1988), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988).

 The Andrades testified that Jose had entered the country on a six month visitor's visa to visit Cindy, his girlfriend at the time. Cindy met with Sanchez, who told Cindy that in exchange for $1000, he would get Jose a work permit. After Cindy paid Sanchez $150, Sanchez provided Jose with a letter of representation similar to the ones that he had given to the illegal aliens at the restaurant in Aurora, Illinois. Sanchez also obtained work for Jose as a corn detassler, as he had done for the illegal aliens. Based on the similarities between the Andrades' dealings with Sanchez and the government's allegations regarding the illegal aliens' dealings with Sanchez, it was not error for the trial court to admit the Andrades' testimony.

### C. Sufficiency of the Evidence

 Sanchez next argues that, in the first trial, the district court should have granted his motion for acquittal on all counts. When reviewing such a claim, we review the evidence in the light most favorable to the government, and give the government the benefit of all reasonable inferences that could be drawn from the evidence. *United States v. Springer,* 831 F.2d 781, 783–84 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988). This argument is identical to Leanna Sanchez's contention in her appeal that there was insufficient evidence to support her conviction. As we noted in the previous case:

> The jury heard evidence that Mr. and Mrs. Sanchez met with illegal aliens; that the aliens told Mr. Sanchez that they were illegal; that Mr. Sanchez told illegal aliens that he could provide immigration papers for them; that Mr. Sanchez paid to rent an apartment for the illegal aliens; that Mrs. Sanchez took the illegal aliens to an apartment paid for by Mr. Sanchez....

*Sanchez,* 927 F.2d at 379. In addition, the jury heard testimony that Sanchez arranged transportation for the aliens to and from employment near Monmouth, Illinois. "Viewing this evidence in the light most favorable to the jury, there was sufficient evidence to support the jury's finding of guilt on these charges." *Id.* Thus, the district court did not err in denying Sanchez's motion for acquittal.

 Sanchez also contends that there was insufficient evidence to find him guilty of conspiracy in the second trial. In the second trial, the jury heard evidence that Sanchez would have Celedonio Rangel and Rosanna Medrano sign I–705 affidavits, each one falsely stating that an applicant

had worked for them on certain farms; that sometimes Sanchez would present blank I–705 affidavits for Rangel and Medrano to sign; that Leanna Sanchez would show Rangel and Medrano pictures of the applicants so that, if necessary, they would recognize the applicants later; that Sanchez coached applicants on how to falsely answer questions in an INS interview; that Sanchez charged illegal aliens from $300 to $800 to "fix" their status; and that I–700 and I–705 forms that Sanchez and his wife prepared for the applicants contained false information. This evidence is sufficient to support Sanchez's conviction in the second trial.

## D. Failure to Produce Affidavits

 Sanchez next argues that his conviction should be reversed because the district court denied his motion for production of the I–705 affidavits that Rangel signed and that Sanchez and his wife filed with the INS. We reject this argument, as we did in Leanna Sanchez's appeal, because even if it was error for the district court to deny Sanchez's motion, the error was harmless. *Sanchez*, 927 F.2d at 379. Failure to produce statements covered by the Jencks Act, 18 U.S.C. § 3500, is not ordinarily cause for reversal "in the absence of either bad faith by the government or prejudice to the defendant." *United States v. Roberts*, 848 F.2d 906, 908 (8th Cir.1988). As we noted when we affirmed Leanna Sanchez's conviction:

> There is no evidence that the government acted in bad faith. The additional affidavits referred to by the government witness did not enhance his credibility, nor did they in any way bear on the question of Sanchez' guilt. These affidavits would not have helped impeach the witness, since he had already admitted to signing them. Furthermore, the affidavits at issue in Sanchez' trial were admitted as evidence. Therefore, since there

was no bad faith and no prejudice, reversal would be improper.

*Sanchez*, 927 F.2d at 379.

## E. Effective Assistance of Counsel

 Sanchez claims that he was denied his right to effective assistance of counsel because, among other things,[1] he and his wife were jointly represented prior to trial. Federal Rule of Criminal Procedure 44(c) provides that:

> Whenever two or more defendants have been jointly charged ... and are represented by the same retained or assigned counsel ..., the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation.

The following exchange took place at the Sanchezes' initial appearance on August 28, 1990:

> THE COURT: Okay. The only thing I want to caution you on—and we'll have to go over this at a later time—to make sure that one attorney is comfortable representing both of you and there's no possible conflict between the two of you, so when you do talk to Mr. Tonini or anyone else about the matter, make sure that we—one attorney will be comfortable representing both of you.
>
> We'll have to explore that in detail at a later time, but the trouble is, even the husband and wife, sometimes you don't always have the same interests, and what may be good for one may not be good for the other, so make sure you fully explore that matter with Mr. Tonini or anyone else.
>
> DEFENDANT NOE SANCHEZ: Yes, sir.

The court therefore fulfilled its obligation to advise Sanchez of his right to separate representation. The Sanchezes retained their own counsel, and chose not to hire separate attorneys until trial. As Sanchez recognized in his brief, claims of ineffective

---

1. Without discussing what the other grounds of his ineffective assistance of counsel claim are, Sanchez states in his brief that "[t]he record is inadequate to efficiently address all ineffectiveness claims at this time," and reserves this issue for a habeas corpus proceeding.

assistance of counsel are "properly raised in a habeas corpus proceeding, where the district court can hold evidentiary hearings to examine the performance of counsel." *Sanchez*, 927 F.2d at 378.

## F. Jury Instructions

Finally, we find no merit in Sanchez's claim that the district court's instructions to the jury in the second trial were erroneous. A criminal defendant is entitled to a specific instruction on his theory of the case if the requested instruction correctly states the law and is supported by the evidence. *United States v. Marchant*, 774 F.2d 888, 894 (8th Cir.1985). The district court, however, has "considerable discretion in choosing the form and language of jury instructions." *United States v. Montgomery*, 819 F.2d 847, 852 (8th Cir. 1987).

The court instructed the jury extensively regarding each statute that the government charged Sanchez with violating. Sanchez faults the district court, however, for failing to instruct the jury that "[a] concise interpretation and definition of words and phrases used in these instructions is required as opposed to broad definitions and interpretations. If this case were tried to the Court, the Court would very narrowly construe the criminal statutes." While it is true that penal statutes should be strictly construed, *United States v. Khang*, 904 F.2d 1219, 1222 (8th Cir.1990), our review of the instructions as a whole shows that the district court properly instructed the jury on the law. We find, therefore, that the district court's failure to instruct the jury as Sanchez requested was not an abuse of discretion.

For the reasons discussed above, we affirm.