**UNITED STATES OF AMERICA, Appellee**
**v.**
**DAJER CUEVAS-REYES, Appellant**

No. 08-3059

United States Court of Appeals for the Third Circuit

July 10, 2009

ISHMAEL A. MEYERS, JR., Office of United States Attorney, *Attorney for Appellee.*

DARREN JOHN BAPTISTE, *Attorney for Appellant.*

BARRY, HARDIMAN and COWEN, *Circuit Judges.*

## OPINION OF THE COURT

(July 10, 2009)

HARDIMAN, *Circuit Judge*

Dajer Cuevas-Reyes appeals his conviction for shielding illegal aliens. Because we find that Cuevas-Reyes's actions are insufficient as a matter of law to support a conviction under 8 U.S.C. § 1324, we will reverse.

I.

On November 20, 2007, United States Customs and Border Patrol Agent William Santiago observed two individuals boarding a small plane at the north ramp of Cyril E. King International Airport in St. Thomas, United States Virgin Islands. Santiago, who had been alerted by his superiors that a pilot was trying to take illegal aliens out of the Virgin Islands by private aircraft, radioed tower control to return the plane to the

general aviation area. Upon its return, Santiago confirmed that the plane had six passengers: the pilot, Eliud Gomez-Garcia; Cuevas-Reyes, who was seated in the co-pilot seat; and four women from the Dominican Republic. The women, who were illegal aliens, later testified that they were trying to leave the United States by private plane because of their immigration status and that they had paid Cuevas-Reyes between $600 and $1,300 to arrange their flight to the Dominican Republic.

The Government charged Cuevas-Reyes with shielding illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and aiding and abetting Gomez-Garcia in the shielding of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II). The case was tried to verdict in February 2008. Following the Government's case-in-chief and again after all the evidence had been submitted, Cuevas-Reyes moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The District Court denied both motions and the jury found Cuevas-Reyes guilty on both counts. Following the verdict, Cuevas-Reyes moved again for judgment of acquittal, which the District Court again denied. The District Court later sentenced Cuevas-Reyes to 10 months imprisonment and three years of supervised release.

Cuevas-Reyes appeals, asserting that the evidence was insufficient to sustain his convictions. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294.

## II.

Cuevas-Reyes must overcome a "very heavy burden" to overturn the jury's verdict for insufficiency of the evidence. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). We will sustain a defendant's conviction if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

The elements of the crime of "bringing in and harboring certain aliens" are set forth, in relevant part, in 8 U.S.C. § 1324:

Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts

to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation . . . shall be punished according to [the penalties outlined in this section].

8 U.S.C. § 1324(a)(1)(A)(iii).[1] To convict Cuevas-Reyes under the statute, the Government was required to prove:

(1) the alien entered or remained in the United States in violation of the law; (2) the defendant concealed, harbored, or sheltered the alien in the United States; (3) the defendant knew, or recklessly disregarded the fact that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States.

*United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); *accord United States v. Silveus*, 542 F.3d 993, 1002, 50 V.I. 1101 (3d Cir. 2008) (discussing similar test for illegally transporting an alien under 8 U.S.C. § 1324(a)(1)(A)(ii)).

The first and third elements of this test are easily satisfied in the present case. The women testified that they were in the United States illegally and that Cuevas-Reyes knew about it.

■ The analysis of the second and fourth prongs is more difficult. We recently considered the question of what conduct constitutes shielding, harboring, or concealing an illegal immigrant within the meaning of § 1324. *See United States v. Ozcelik*, 527 F.3d 88, 97-101 (3d Cir. 2008). Finding that the goal of § 1324 was to prevent aliens from entering or remaining in the United States illegally, we held that shielding an alien ordinarily includes affirmative conduct — such as providing shelter, transportation, direction about how to obtain false documentation, or warnings about impending investigations — that facilitates an alien's continuing illegal presence in the United States. *Id.* at 99. In doing so, we adopted the test of our sister circuits: "harboring, within the meaning of § 1324, encompasses conduct tending *substantially to facilitate* an alien's remaining in the United States illegally and to prevent government authorities from detecting his unlawful presence." *Id.* (quoting *United States v. Kim*, 193 F.3d 567, 574 (2d Cir. 1999)) (emphasis in original).

---

[1] In addition to the substantive offense, subsection (a)(1)(A)(v)(II) prohibits aiding or abetting another person in the commission of the act described above.

Applying this test, as our precedent requires, there is no evidence from which a reasonable juror could infer that Cuevas-Reyes's actions constituted substantial facilitation of the women's remaining in the United States illegally.[2]

■ As a preliminary matter, we note that Cuevas-Reyes's actions were undertaken for the purpose of *removing* the women from the United States rather than helping them remain here. The women testified that they paid Cuevas-Reyes to take them to Santo Domingo, Dominican Republic, and that he refunded their money at the airport when it became apparent he would not deliver them. Because the goal of § 1324 is to prevent aliens from entering or remaining in the United States illegally by punishing those who shield or harbor them, *see Ozcelik*, 537 F.3d at 98, punishing Cuevas-Reyes for helping illegal aliens *leave* the country is contrary to that goal.

Secondly, the Government argues that Cuevas-Reyes may be found guilty because he did not inform the women that they were required to pass inspection by Immigration and Customs Enforcement officials at the airport despite having been aware of their illegal status. In so doing, the Government asserts, Cuevas-Reyes failed to follow procedures set by the federal government, thereby concealing the illegal immigrants from detection while in the United States.

■ This argument fails in light of *Ozcelik*, where we declined to hold that there was substantial facilitation. There, an INS official advised an illegal immigrant to "lay low," not draw attention to himself, and avoid the address that the INS had on file for him. *Ozcelik*, 537 F.3d at 99. We held that this did not constitute substantial assistance because the official had only provided "obvious information that any fugitive would know." *Id.* at 99. Likewise, in *Silveus* we acknowledged that mere cohabitation with an illegal alien or "reasonable control of the premises" does not constitute "harboring" within the meaning of the statute. 542 F.3d at 1003. Rather, the Government must "prove that [the defendant's] 'conduct

---

[2]    Our dissenting colleague rightly notes that the fourth prong of the test originally articulated by the Fifth Circuit in *DeJesus-Batres* and embraced by our Court in *Silveus* — which requires that the Government prove the defendant's conduct "tended to substantially facilitate the alien remaining in the United States" — is not found in the statutory language. It is equally clear, however, that our decision in *Ozcelik* read that prong into the statute; indeed, it was that case's central holding. Because we are bound by *Ozcelik*, it would be inappropriate for this panel to revisit that issue.

tend[ed] substantially to facilitate [the alien's] remaining in the United States illegally and to prevent government authorities from detecting his unlawful presence.' " *Id.* at 1004 (quoting *Ozcelik*, 527 F.3d at 99).

■ The Government cannot make such a showing in this case. There is no evidence in the record that Cuevas-Reyes helped the aliens remain in the United States; he merely told the women to meet him directly at the plane. To the extent Cuevas-Reyes's advice helped the departing women avoid detection by Immigration and Customs Enforcement, this too facilitated their removal from the country because they presumably would have been detained in the United States and remained even longer had they been apprehended.

■ The Government's position would impose an affirmative obligation on citizens to advise illegal aliens to turn themselves in or to comply with immigration laws; § 1324 imposes no such duty.

Finally, we note that Cuevas-Reyes's actions fall well short of the measures taken by defendants in cases from our sister circuits where "substantial facilitation" was found. *See, e.g., Kim*, 193 F.3d at 574-75 (employer who required his illegal alien employee to obtain false documentation in order to mislead the INS and gave him detailed instructions regarding how to report falsely that he had been terminated from his job was guilty of substantial facilitation); *United States v. Sanchez*, 963 F.2d 152, 154-55 (8th Cir. 1992) (providing illegal aliens with apartments and immigration papers justified a conviction for shielding, harboring, or concealing); *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1072-73 (5th Cir. 1982) (upholding conviction for a foreman who had warned his illegal alien employees that INS agents were on site by speaking loudly and making gestures toward the INS agents to encourage the employees to flee the work facility).

## III.

Despite the heavy burden he bears on appeal, we hold that Cuevas-Reyes's conduct, when viewed in the light most favorable to the Government, does not meet the second or fourth requirements of the test we established in *Ozcelik*. Accordingly, we will reverse the denial of Cuevas-Reyes's Rule 29 motion, and vacate his convictions for both shielding illegal aliens and aiding and abetting.

COWEN, *Circuit Judge*, dissenting

Because nothing in the text of 8 U.S.C. § 1324(a)(1)(A)(iii) requires that the shielding or concealing of an alien be for the purpose of enabling that alien to remain in the United States, I respectfully dissent. There is no reason that § 1324 cannot also prohibit individuals from assisting aliens fleeing the United States. The key is that the individual substantially assisted, or attempted to substantially assist, the alien in avoiding detection. Accordingly, I would find that the evidence supported the conviction and affirm the District Court's judgment.

On its face, § 1324 prohibits the concealing, harboring, or shielding of any person known to be an alien from detection by the authorities.[3] Thus, to establish a violation of the statute as it is written, the Government must only prove three things: (1) an alien entered or was present in the United States in violation of the law; (2) the defendant knew, or recklessly disregarded, the fact that the alien was unlawfully present in the United States; and (3) the defendant concealed, harbored, or shielded the alien from detection.[4] In this case, there is no doubt that Dajer Cuevas-Reyes knew that the four women were unlawfully present in the United States. The only question is whether his attempt to smuggle them out of the country constituted concealing or shielding within the prohibitions of § 1324.[5]

As the majority has pointed out, this Court considered the meaning of concealing, harboring, and shielding in the context of § 1324 in *United*

---

[3]    Section 1324 states that criminal penalties will be imposed on any person who:knowingly or in a reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or means of transportation.

       8 U.S.C. § 1324(a)(1)(A)(iii).

[4]    Citing precedent from the Court of Appeal for the Fifth Circuit, the majority asserts that the Government must also prove a fourth element: that the defendant's conduct tended to substantially facilitate the alien remaining in the United States. However, such an element is neither supported by the text of § 1324, nor *Ozcelik*, which set out to provide insight on what it means to conceal, harbor, or shield, *see* 527 F.3d at 100. Rather, it appears as if the majority has confused the common interpretation of what constitutes concealing, harboring, or shielding with an independent fourth element.

[5]    Harboring is generally understood to relate to providing shelter and is therefore not applicable here. *See United States v. Acosta De Evans*, 531 F.2d 428, 430 (9th Cir. 1976) (construing "harbor" to mean "afford shelter to").

1017

*States v. Ozcelik*, 527 F.3d 88 (3d Cir. 2008), and concluded that the terms "encompass[ed] conduct tending to substantially facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting the alien's unlawful presence." *Id.* at 100 (citations and internal marks omitted). However, *Ozcelik* was decided under different factual circumstances, which inevitably shaped the Court's holding, and therefore makes its application here somewhat incongruous.

In *Ozcelik*, the alien, Tuncer, had overstayed his student visa but had no desire to leave the United States. He was put in touch with Ozcelik, who worked for Customs and Border Protection, and was thought to be able to help resolve Tuncer's immigration issues. The Court had to decide whether the advice that Ozcelik gave Tuncer substantially assisted Tuncer in avoiding detection, thereby enabling him to remain in the United States. Given this inquiry, it is understandable that the Court couched its holding in terms of remaining in the United States — because that is what the alien intended to do, and the only way to remain in the United States was to avoid detection.[6]

This case presents a different factual scenario than most prosecutions[7] under § 1324 because the aliens here were not trying to remain in the

---

[6]  All of the cases from the other Courts of Appeals and from which *Ozcelik's* reasoning is drawn, are similar to *Ozcelik* in that the aliens who were being concealed or shielded wanted to stay in the United States. *See, e.g., United States v. Kim*, 193 F.3d 567 (2d Cir. 1999) (Defendant instructed his alien employees to file false documents with the INS after their names appeared on list of aliens who lacked proper work authorization.); *United States v. Sanchez*, 963 F.2d 152 (8th Cir. 1992) (Defendant provided illegal aliens with apartments and false immigration papers.); *United States v. Rubio-Gonzalez*, 674 F.2d 1067 (5th Cir. 1982) (Defendant warned alien co-workers that immigration officials were at their job site.); *United States v. Varkonyi*, 645 F.2d 453 (5th Cir. 1981) (Defendant provided employment and lodging to two aliens, and forcibly interfered with INS agents to prevent the aliens' apprehension.); *United States v. Cantu*, 557 F.2d 1173 (5th Cir. 1977) (Defendant assisted illegal employees in leaving his place of business when INS agents arrived for an inspection.); *United States v. Acosta de Evans*, 531 F.2d 428 (9th Cir. 1976) (Defendant provided shelter to unlawfully present aliens.); *United States v. Lopez*, 521 F.2d 437, 441 (2d Cir. 1975) (Defendant "provid[ed] shelter and other services in order to facilitate the continued unlawful presence of the alien in the United States.").

[7]  *See Ozcelik*, 527 F.3d at 99 ("[G]enerally [convictions under § 1324] involve defendants who provide illegal aliens with affirmative assistance, such as shelter, transportation, direction about how to obtain false documentation, or warnings about impending investigations."). This observation is apt because *generally*, aliens who come to the United States want to remain in the United States. But, as this case shows, not all aliens share that desire.

United States. But that does not mean that Cuevas-Reyes's attempt to shield the aliens from detection did not also violate the statute. In this case, none of the four aliens expressed a desire to remain in the United States. Indeed, they were apprehended as Cuevas-Reyes and Eliud Gomez-Garcia were in the process of surreptitiously transporting them back to the Dominican Republic. Thus, it makes little sense to apply the portion of *Ozcelik* dealing with remaining to this case because the aliens here were leaving the United States, and remaining is not an element of the statute.

Putting aside the fact that in *Ozcelik* the alien wanted to remain in the United States, *Ozcelik* is properly read as describing shielding and concealing as conduct that tends to substantially assist an alien in avoiding detection by government authorities. Indeed, this is the correct reading of *Ozcelik* because nothing in the text of the statute suggests that the Government must prove that the assistance in avoiding detection occurred *for the purpose* of enabling the alien to remain in the United States. In order to avoid adding an element to the statute, *Ozcelik* must be understood as positing that an individual violates § 1324 when he provides substantial assistance to an alien in avoiding detection; whether the alien intends to remain or leave the United States is ancillary. Assistance in avoiding detection is sufficient to establish a violation of § 1324.

There is no question that Cuevas-Reyes substantially assisted these four women in avoiding detection by arranging to fly them to the Dominican Republic. Cuevas-Reyes instructed the women to meet him at the north ramp of the airfield because he intended to take them out of the country without clearing customs.[8] Smuggling aliens out of the country is the ultimate way to assist them in avoiding detection. All of the elements

---

[8] Air commerce regulations promulgated by CBP require all aircraft carrying passengers for hire to clear customs before departing the U.S. for a foreign area. 19 C.F.R. § 122.61(a)(1) (2007). There is an exception for private aircraft, *see* 19 C.F.R. §§ 122.26, 122.61 (2007), however because the women paid for their transportation to the Dominican Republic, Gomez-Garcia's airplane cannot be classified as a private aircraft in this instance. A private aircraft is "any aircraft engaged in a personal or business flight to or from the U.S. which is not carrying passengers and/or cargo for commercial purposes." 19 C.F.R. § 122.1(h)(1) (2007). When Cuevas-Reyes accepted the women's money in exchange for transporting them to the Dominican Republic, Gomez-Garcia's plane was not being used as a private aircraft. Consequently, the aircraft and its passengers were required to clear customs prior to departing the Virgin Islands. *See* 19 C.F.R. § 122.42 (2007) ("Aircraft leaving the U.S. Virgin

of the offense are present: Cuevas-Reyes knew that the four women were aliens who were unlawfully present in the United States and he attempted to shield them by "prevent[ing] government authorities from detecting [their] unlawful presence." *Ozcelik*, 527 F.3d at 100. This was sufficient evidence for the jury to find that Cuevas-Reyes violated § 1324(a)(1)(A)(iii). The fact that the women were attempting to leave the United States, as opposed to enter or remain, has no impact on the illegality of Cuevas-Reyes's actions under the plain language of the statute. By inappropriately applying *Ozcelik* to this case, the majority inadvertently writes a fourth element into the statute and unnecessarily reverses a conviction that should be affirmed.

---

Islands for a place other than the U.S. are governed by the provisions of this part that apply to aircraft leaving the U.S. for a foreign area.").