**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3198
_____

UNITED STATES OF AMERICA,

v.

EUGENE STALLINGS, JR.,
                                    Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-14-cr-00069-007)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
on June 13, 2017
_____

Before: JORDAN, KRAUSE, *Circuit Judges*, and STEARNS, *District Judge*,[*]

(Opinion Filed: July 18, 2017)
_____

OPINION[**]
_____

KRAUSE, *Circuit Judge*.

_____

[*] The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Following a jury trial, Eugene Stallings, Jr. was convicted of conspiring to distribute heroin and distributing and possessing with the intent to distribute heroin. On appeal, he raises a number of challenges to his conviction. For the reasons set forth below, we will affirm.

## I.    Background

According to the testimony at trial, Stallings—based in Baltimore, Maryland—sold heroin to Danny Forrester, Gabriel Stouffer, and Ashley Gries, heroin distributors in Pennsylvania, over the course of approximately five months. Known to his buyers as "Bruno," Stallings communicated frequently with Forrester, Stouffer, and Gries, who traveled to Baltimore every week, and often every day, to purchase heroin from him. Stallings sold to them in bulk, up to twenty-four grams per sale, and they repackaged and resold the drugs in Pennsylvania.

In February 2014, twenty-one-year-old Kyle Golter died from a heroin overdose in Franklin County, Pennsylvania. Officers traced the heroin that caused Golter's death back to Gries, and, after a brief investigation, Forrester, Stouffer, and Gries were indicted for multiple drug trafficking offenses. Shortly thereafter, all three gave statements identifying Stallings as their dealer, and Stallings was charged in a superseding indictment with two counts of conspiracy to distribute heroin and to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846; two counts of distribution and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); and one count of use of a communication facility to facilitate a drug trafficking offense, in

violation of 21 U.S.C. § 843(b).  Following a trial at which Forrester, Stouffer, and Gries testified against him,[1] a jury convicted Stallings on all counts, and the District Court sentenced him to 252 months in prison.  This timely appeal followed.

## II.    Discussion[2]

On appeal, Stallings advances four arguments.  First, he asserts the Government adduced insufficient evidence that he conspired with the Pennsylvanians to distribute heroin.  Second, he contends the District Court erred in refusing to give a buyer-seller instruction and misstated the law of conspiracy in the jury instructions given.  Third, he argues venue was improper in the Middle District of Pennsylvania for the distribution counts.  And, finally, he challenges the District Court's application of the Speedy Trial Act.  We address these issues in turn.

### A.    Sufficiency of the Evidence

Stallings first argues there was insufficient evidence to support his conspiracy conviction because "there was not a single fact indicating more than an arm's-length, buyer-seller relationship."  Appellant's Br. 20.  We apply a "highly deferential" standard of review to determine if the evidence was legally sufficient, *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc), and, viewing the evidence in the light most favorable to the Government, we will sustain a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,"

---

[1] All of Stallings's codefendants pled guilty prior to trial.

[2] The District Court had jurisdiction to hear this case under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

*United States v. Cuevas-Reyes*, 572 F.3d 119, 121 (3d Cir. 2009) (citation omitted).

Stallings cannot meet this heavy burden.

To prove conspiracy under 21 U.S.C. § 846, the Government must demonstrate both that a conspiracy existed and that Stallings was a member of it. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). To establish the conspiracy, the Government must prove: "(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (internal quotation marks and citation omitted). As the District Court noted, Stouffer's testimony gave "almost verbatim" the elements of a conspiracy charge. J.A. 614. Stouffer testified that after buying heroin from Stallings, Stouffer and Gries would "bag [the heroin] into bags [to] get ready to sell it," "sell[] [the heroin] together and tak[e] the profits and put[] them together," and "share[] with each other what [they] were doing" so that they "both benefited from the sale." J.A. 518, 524. This testimony was more than sufficient for a rational juror to find a conspiracy to distribute heroin.

The evidence was also sufficient for a rational juror to conclude that Stallings was a member of that conspiracy, i.e., that he knew he was part of a larger operation, and not in a mere buyer-seller relationship. *See United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994). In *United States v. Gibbs*, we laid out six factors relevant to this determination, noting that the presence of just one of these factors "furthers the inference that the [seller] knew that he was part of a larger operation and hence can be held responsible as a co-conspirator." 190 F.3d 188, 199–200 (3d Cir. 1999). Here, we have three such factors: a

4

lengthy affiliation with the conspiracy, transactions involving large amounts of drugs, and a demonstrated level of mutual trust.[3] *See id.* at 199. Forrester, Stouffer, and Gries each testified that they bought heroin from Stallings every week and often every day over a five-month period, that Stallings regularly sold them eight to ten grams (and sometimes up to twenty-four grams) of heroin at a time, with each gram yielding at least twenty individual packages of heroin for resale, and that the quantities of drugs that Stallings typically sold to them increased over time—a trend indicating that trust developed between the parties over the five-month arrangement, *see id.* (explaining that a "large transaction or an accumulation of deals suggests more trust, garnered over . . . time"). Thus, we agree with the District Court that there was sufficient evidence to support Stallings's conspiracy convictions.[4]

---

[3] Although Stallings emphasizes repeatedly that one of the other *Gibbs* factors—whether the drugs were purchased on credit—was not met, *Gibbs* itself instructs that the absence of any one factor is "not necessarily dispositive." 190 F.3d at 199.

[4] Stallings contends that this case is a "virtual sequel" to our decision in *United States v. Pressler*, 256 F.3d 144 (3d Cir. 2001). Appellant's Br. 26. In *Pressler*, however, we vacated a drug dealer's conspiracy conviction because we concluded the record supported only a string of unrelated buyer-seller relationships among the parties and there was "no independent evidence of an overarching conspiracy." *Id.* at 147, 152. Here, in contrast, there was ample evidence of the existence of a conspiracy and of Stallings's participation in it, and, thus, *Gibbs*, not *Pressler*, controls. *See Pressler*, 256 F.3d at 147 (distinguishing *Gibbs* as applicable when the question presented is "whether the defendant had joined [an existing conspiracy]," as opposed to "whether a conspiracy existed at all").

**B.     Jury Instructions**

Stallings next contests the jury charge on two separate grounds, asserting that he was entitled to a buyer-seller instruction and the jury instructions misstated the law of conspiracy.  These challenges lack merit.

We review a district court's refusal to give a proposed jury instruction for abuse of discretion.  *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008).  A defendant is not entitled to an instruction on a defense theory if his theory is not supported by the evidence or his proposed instruction is duplicative of instructions already included in the charge.  *Id.* at 176.  As the District Court explained, there was clear evidence of conspiracy in this case, and, as such, the Court did not abuse its discretion in denying Stallings's request for a buyer-seller instruction.  *See United States v. Boone*, 279 F.3d 163, 192 (3d Cir. 2002) (affirming the denial of defendant's request for a single-transaction instruction where the evidence was "sufficient to prove a conspiracy").  Moreover, the buyer-seller instruction was also unnecessary because the essence of Stallings's request—that the jury be told a buyer-seller arrangement does not establish a conspiracy—was covered by the conspiracy charge given.  *See Hoffecker*, 530 F.3d at 177.  The jury, in other words, was required to find the co-conspirators' unity of purpose, intent, and agreement to work together to distribute heroin in order to convict Stallings of conspiracy—findings that necessarily foreclose a mere buyer-seller relationship.

Stallings also argues the jury instructions misstated the law of conspiracy by likening multiple buy-sell arrangements to multiple conspiracies.  Because Stallings

6

failed to object to the jury instructions at trial, we review for plain error.[5] *See United States v. Salahuddin*, 765 F.3d 329, 337 (3d Cir. 2014). That is, we may not reverse unless there was error that was "clear or obvious[,]… affected the defendant's substantial rights[,] and … seriously affected the fairness, integrity, or public reputation of the legal proceeding." *United States v. Tyson*, 653 F.3d 192, 211 (3d Cir. 2011). That high threshold is not met here.

The jury instruction in question simply summarized Stallings's defense theory, stating that "[i]n response to the conspiracy charges Mr. Stallings has argued that there was no conspiracy, or alternatively that there were merely two or more separate buy/sell arrangements between Mr. Stallings and the other alleged coconspirator[s]," and then proceeded to inform the jury, before providing an instruction on single or multiple conspiracies, that "[w]hether a single conspiracy or multiple conspiracies exist is a question of fact that you must decide." J.A. 695. Even if the reference to "two or more separate buy/sell arrangements" immediately preceding the instruction on whether there were single or multiple conspiracies, J.A. 695, would have caused confusion in isolation, jury instructions "must be read as a whole," and "[w]e will affirm the district court when the charge as a whole fairly and adequately submits the issues in the case to the jury."

---

[5] Stallings argues that his "earlier request for the accurate buyer-seller instruction was sufficient to preserve the error." Appellant's Reply Br. 8. This general request, however, which made no reference to the multiple conspiracy instruction at issue on appeal, did not preserve his objection. *See United States v. Santos*, 932 F.2d 244, 251–52 (3d Cir. 1991). In fact, when provided with a copy of the draft jury instructions, defense counsel affirmatively stated he had no objections; nor did he object after the instruction was given at trial.

7

*Gov't of the V.I. v. Mills*, 821 F.3d 448, 465 (3d Cir. 2016) (internal quotation marks and citations omitted). Here, where the rest of the jury charge on conspiracy proceeded almost verbatim from our own model instructions, and adequately presented the elements of conspiracy to the jury, the plain error standard is not met. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (noting "[w]e have a hard time concluding that the use of our own model jury instruction can constitute error").

## C.     Venue

Stallings's next argument is that venue did not lie in the Middle District of Pennsylvania for the two distribution counts because "the relevant possession and distribution took place exclusively within the District of Maryland." Appellant's Br. 34. We review legal questions regarding venue *de novo*, *see United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014), and find no legal error here.

When assessing whether a defendant was tried in the proper venue, we "identify the conduct constituting the offense" and then "discern the location of the commission of the criminal acts," *id.* (citation omitted), bearing in mind that any offense "begun in one district and completed in another . . . may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed," 18 U.S.C. § 3237(a). As the District Court observed, Stallings repeatedly reached out to Forrester, Stouffer, and Gries to orchestrate sales of heroin, and did so knowing the heroin would be resold in Pennsylvania. Although Stallings's distribution began in Maryland, it ended in the Middle District of Pennsylvania, and, thus, venue was proper there. *See United States v. Uribe*, 890 F.2d 554, 558–59 (1st Cir. 1989) (noting that possession with intent to

8

distribute is a continuing offense under § 3237(a)); *cf. United States v. Malfi*, 264 F.2d 147, 150, 152 (3d Cir. 1959) (holding venue appropriate in New Jersey for charge of aiding and abetting a drug sale where the defendant agreed to terms of drug sale and received payment in Pennsylvania before having associate deliver drugs to New Jersey).

## D.    Speedy Trial Act

Finally, Stallings challenges the District Court's denial of his motion to dismiss pursuant to the Speedy Trial Act, asserting that continuances were improperly granted from June 2015 to November 2015 and from December 2015 to February 2016.[6]  When a continuance is granted "after a proper application of the statute to established facts," we review only for abuse of discretion.  *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 n.3 (3d Cir. 1988).  Here, we find none.

The Speedy Trial Act requires a defendant be brought to trial within 70 days of an indictment or initial court appearance, whichever comes later.  *See* 18 U.S.C. § 3161(c)(1).  Any delay following a motion for a continuance, however, is excludable if the district court finds "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *Id.* § 3161(h)(7)(A).  A "reasonable period of delay" is also excludable "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance

---

[6] Although the District Court briefly noted that it believed Stallings's motion to dismiss on speedy trial grounds to be untimely, it issued a written opinion addressing the merits of that motion, and the Government does not raise timeliness as an issue on appeal.  Thus, we will proceed to review the District Court's determination on substantive and not merely procedural grounds.

has been granted." *Id.* § 3161(h)(6). As a result, once defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (internal quotation marks and citation omitted).

Stallings contends the District Court erred in granting continuances from June 2015 to November 2015 to facilitate ongoing plea negotiations with Stallings's codefendants and to enable new counsel for Stouffer time to prepare for trial. However, we have previously held that an "ends of justice" continuance may be granted "in appropriate circumstances to permit plea negotiations to continue," *United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994), and to allow new counsel sufficient time to prepare his case, *Rivera Constr. Co.*, 863 F.2d at 296–97. *See also* 18 U.S.C. § 3161(h)(7)(B)(iv). Thus, because these continuances were properly excludable against Stallings's codefendants and Stallings never filed a motion to sever, these continuances properly applied to him, too.[7] *See* 18 U.S.C. § 3161(h)(6); *Arbelaez*, 7 F.3d at 347.

Stallings also argues that the District Court erred in granting a continuance from December 2015 to February 2016 to accommodate Government witnesses' and the prosecutor's scheduling conflicts. When considering an "ends of justice" continuance, a court should assess whether the failure to grant it "would unreasonably deny . . . the

---

[7] Stallings correctly points out that the time excludable under 18 U.S.C. § 3161(h)(6) is subject to a reasonableness constraint. That constraint is not implicated here, however, because Stallings's codefendants concurred in each request for a continuance, and the District Court explicitly noted when granting each continuance that, while Stallings did not concur, his case had not been severed from those of his codefendants. When, despite this explanation from the District Court, Stallings still did not move to sever, the subsequent period of delay cannot be deemed unreasonable.

Government continuity of counsel . . . or the attorney for the Government the reasonable time necessary for effective preparation." 18 U.S.C. § 3161(h)(7)(B)(iv). That standard is met where, as here, the prosecutor had a sudden family emergency in late November, requiring out-of-state travel with no certain return date, and another multi-defendant trial scheduled for mid-January.[8] Accordingly, we find no abuse of discretion in the District Court's application of the Speedy Trial Act.

III.    Conclusion

For the above-stated reasons, we will affirm Stallings's convictions.

---

[8] Although Stallings contends this continuance was improperly granted so that Government witnesses could attend pre-planned hunting trips in mid-December, it is not clear that any part of the continuance was attributable solely to accommodating these plans. Given the uncertainty surrounding the prosecutor's schedule, it was not an abuse of discretion for the District Court to continue the trial until February, rather than set an earlier date in December, which would then need to be rescheduled again if the prosecutor remained unavailable or unable to prepare for trial because of her family emergency.